JOHN VAN BUREN, attorney general, *vs.* THE CHENANGO COUNTY MUTUAL INSURANCE COMPANY.

The receiver of an insolvent mutual insurance company, appointed upon the application of the attorney general, is entitled, on passing his accounts, to be allowed his commissions on the value of deposit or premium notes which come into his hands as receiver, and which he has surrendered to the respective makers thereof, under the order of the court.

The deposit or premium notes of a mutual insurance company constitute its capital stock; and if the company becomes insolvent, and a receiver is appointed, it is his duty to proceed and collect the amounts due upon such notes, as capital stock, unless he is excused from so doing, by an order of the court.

MOTION by the receiver of the defendants to be allowed commissions on the value of the deposit notes surrendered by him under the order of the court. The receiver was appointed by the chancellor in September, 1845, and the order of appointment directed him· "to collect, sue for and recover," all the demands due to the company, including said notes. The receiver, after an investigation of the affairs of the company, ascertained that all the debts due from the company could be paid without the collection of the entire amount due on the deposit notes, and obtained an order from the chancellor excusing him from collecting the entire amount of said notes, and authorizing him to collect only such amounts as he might think ample to meet the claims due from the company. There were but two assessments, the first from one to fourteen per cent, the last two per cent.

The receiver, by order made in 1848, was authorized to surrender said notes to the makers thereof; and notes upon which was due over $100,000 had been surrendered under that order, to more than four thousand makers thereof.

*Henry R. Mygatt,* for the receiver, cited, *Mc Whorter* v. *Benson,* (*Hopk. Ch. R.* 42 ;) *Cairns* v. *Chaubert,* (9 *Paige,* 163 ;) *Matter of De Peyster,* (4 *Sandf. Ch. R.* 511 ;) *Bennett* v. *Chapin,* (3 *Sandf. S. C. R.* 673.)

*B. F. Rexford,* for the company.

MASON, J.   The statute provides that receivers shall, in addition to their actual disbursements, be entitled to such commissions as the court shall allow, not exceeding the sum allowed by law to executors or administrators. (2 *R. S.* 470, § 76.) And the statute provides that the surrogate shall allow to executors or administrators, on the settlement of their accounts, for their services, over and above their expenses, the following sums, to wit: 1. For receiving and paying out all sums of money, not exceeding one thousand dollars, at the rate of five dollars per cent.   2. For receiving and paying out any sums of money exceeding one thousand dollars, and not amounting to five thousand dollars, at the rate of two dollars and fifty cents per cent. 3. For all sums above five thousand dollars at the rate of one dollar per cent, and in all cases such allowances shall be made for their actual and necessary expenses as shall appear just and reasonable.   This statute has received a very liberal construction from our courts.   It was decided by Chancellor Sanford in the case of *Mc Whorter* v. *Benson*, (1 *Hopk.* 28,) that the executor or guardian was entitled to all proper expenses to which he had been subjected in the care or management of the estate, and that he might employ an agent or clerk, and charge the estate with the expense, where from the peculiar situation of the property, or from its nature, it was beneficial for the estate to subject it to that extra expense: and the same was affirmed by Chancellor Walworth in the case of *Vanderheyden* v. *Vanderheyden*, (2 *Paige*, 287.)   The court say, however, that for his own services he must be confined to the allowance as fixed by the statute, by way of commissions on the moneys received and disbursed, in full for all his services in discharge of the trust. It was held by Chancellor Walworth, however, in the case of *Cairns and others* v. *Chaubert and wife*, (9 *Paige*, 160,) that where an executor transfers bonds and mortgages and other good securities, belonging to the estate of the testator, to a third person, for the benefit of the legatees, with the assent of the surrogate, he is entitled to the same commissions on them as if he had actually collected the moneys on them, and paid them, or invested them as directed by the will.   The same rule was

laid down by Vice Chancellor Sandford, in the *Matter of De Peyster*, (4 *Sandf. Ch.* 511,) where he extends the rule to bonds, mortgages, stocks, and to real estate which his predecessor had bid in on the foreclosure of mortgages thereon, the same being deemed in equity, personalty.

In the case of *Bennett* v. *Chapin and others*, (3 *Sandf. S. C. R.* 673,) the receiver was directed by an order of the court to pay over and deliver all the money, property, and effects in his hands to certain of the parties. He paid over the money collected, amounting to about $20,000, and transferred and delivered a large amount of book accounts and other things in action, and the court held that he was entitled to receive his commissions not only upon the moneys, but also upon the value of all the assets taken out of his hands by the order of the court set·tling the suit and delivered to the parties, and directed, if the parties did not agree upon the value of the assets, that a referee be appointed to ascertain their value.

In the case under consideration, Mr. Hyde, the receiver of this insolvent corporation, claims his commissions on the deposit notes of this company, which came into his hands as receiver, and which he has surrendered under the order of the court, to the several makers thereof.

It was found after the receiver had collected together the assets of this company, which consisted principally in the deposit notes of the company, that there would be more than enough to pay all creditors of the company, and indeed that there would be about $100,000 more than enough, if the deposit notes were all collected. The receiver, by order of the late chancellor, was required to collect these notes, and indeed if we have been right in the construction which we have put upon his powers and duties, he was required to do so, without an order. (2 *R. S.* 469, § 69.) It has been repeatedly held in this district, at the general terms, that these deposit notes are to be considered the capital stock of this company, and I would here repeat what I said on a former occasion. " This question has been presented to us in several cases heretofore, and I have bestowed the most

deliberate consideration upon the question, and I have not been able to come to any other conclusion than that these deposit notes are to be regarded as an advance made by the members of the company for the security of all persons with whom the corporation may contract liability. That in short, these deposit notes constitute the capital stock of the company, or at least, that this is so as regards this company and its creditors. It has been adjudged in the supreme court of Pennsylvania, that the deposit or premium notes of these mutual insurance companies, are to be regarded as the capital stock of their companies, and the same has been held by this court in several cases which have been before it in reference to this same company. This was so adjudged in the case of *Hyde, receiver,* v. *Beardsley,* and *Hyde, receiver,* v. *Marvin,* decided at the May general term, 1848. These cases have been followed by several adjudications since.

"It was also decided in the cases above cited, that the plaintiff, as receiver of this company, was entitled to collect the whole amount of these deposit or premium notes, under article 3d, part 3d, chap. 8, sec. 69 of the R. S., (2 *R. S.* 469, § 69,) and that too, without any assessment. It was also adjudged in these cases that all the members of the company were bound by the adjudication of the chancellor, declaring this an insolvent corporation, and appointing the plaintiff receiver, with these powers. That the final order of the chancellor in this matter, was in the nature of a decree in a creditor's suit where several distinct creditors have claims for payment of their debts ratably or in order of priority. (*Hyde, receiver,* v. *Beardsley. Same* v. *Marvin. See also* 10 *Paige,* 382, 290.)"

In the case of *Hyde, receiver,* v. *Beardsley,* above cited, the following is a extract from the opinion of the court, delivered by Shankland, presiding justice: "It is apparent from the recital in the declaration, that the attorney general of this state proceeded against the Chenango County Mutual Insurance Company, as an insolvent corporation, by virtue of the 39th and 40th sections of the act entitled "Of proceedings against corporations in equity." (2 *R. S.* 377.) The 41st section of said act authorizes the chancellor to appoint a receiver to take charge of

the property and effects of such corporation, and to collect, sue for and recover the debts and demands that may be due the corporation. The 42d section declares such receiver to possess all the powers and authority conferred in article 3 of title 4, upon receivers appointed in case of the voluntary dissolution of a corporation, and the 67th section of the act thus referred to, (2 *R. S.* 383, § 67,) declares that such receivers shall be vested with all the estate, real and personal, of such corporation, from the time of filing security, and shall be trustees of such estate, for the benefit of the creditors of such corporation and of its stockholders. And the 69th section declares, that "if there shall be any sum remaining due upon any share of stock subscribed in such corporation, the receiver shall immediately proceed and recover the same, unless the person so indebted shall be wholly insolvent; and for that purpose may file a bill in the court of chancery, or may prosecute an action at law for the recovery of such sum, without the consent of any creditors of such corporation. Every person insured in the company in question became a member of the same, and is bound by the adjudication of the court of chancery, in the same manner as if he had had personal notice of the proceedings instituted by the attorney general to declare the said company insolvent and for the appointment of a receiver— and the defendant is estopped from saying that the receiver is not duly appointed according to the provisions of the statute. The final order of the chancellor for the appointment of a receiver is in the nature of a decree in a creditor's suit, where several distinct creditors have claims for the payment of their debts ratably, or in order of priority. (10 *Paige,* 382, 290.) The statute in question makes it the duty of the receiver to proceed and collect the amount of stock due from the stockholders respectively; and it is no defense for them to say, that the debts of the corporation are not sufficient in amount to require the whole to be paid in; because if a surplus exists after paying the debts and expenses of the corporation, the same is to be refunded to the stockholders in proportion to the amount paid in by them on their shares of stock. (2 *R. S.* 385, § 83. 1 *Barb. Ch.* 122.) It is therefore immaterial whether the chancellor has

power in cases like this to allow the receiver to collect less than the full amount of the deposit notes due the corporation : because if he had not that power the recital of that order of the chancellor, and the assessment by the receiver by virtue of it, if void, could not impair the clear statutory authority conferred upon the plaintiff to recover the whole note. The deposit notes of the members of these mutual insurance companies constitute the capital stock of these companies."

If the receiver had collected all these notes, or as many of them as were collectable, the 79th and 80th sections of the statute, (2 *R. S.* 471,) require him to make distribution among the creditors, and then the 83d section of the statute provides that if there shall remain any surplus in the hands of the receiver, he shall distribute the same among the stockholders of such corporation, in proportion to the respective amounts paid in by them severally, on their shares of stock. There is no doubt that under this section of the statute this receiver would be required to distribute to the several makers of the deposit notes, in proportion to the amount collected of them or paid in by them. The receiver, instead of collecting all the notes, applied to the court and obtained leave to make assessments from time to time, and finally surrendered the notes to the several makers, on their paying such an assessment upon them as was sufficient to pay all the creditors of the company. It will be seen from what we have already said in reference to the powers and duties of this receiver, that he held these notes in trust, for the double purpose of paying the creditors of this corporation, and distributing the surplus amongst the makers of the deposit notes who have paid in the moneys upon the same. The surrender, therefore, of these notes to the stockholders of the company, instead of collecting them and distributing back the moneys to the several makers thereof, is, within the principle of the cases to which we have above referred, to be deemed in legal effect, so far as the receiver's claim to commissions is concerned, as so much money received and paid over for the purposes of the trust, and I think that I am within the authority of the case of *Bennett* v. *Chapin*, (3 *Sandf. S. C. R.* 673,) in allowing this

receiver commissions upon these surrendered notes. His commissions, however, are only to be allowed upon the value of the notes, and not upon those which were not collectable.

[CHENANGO SPECIAL TERM, August 3, 1852. *Mason*, Justice.]