In the matter of Chas. W. Campbell.

# SUPREME COURT.

IN THE MATTER of the petition of CHARLES W. CAMPBELL, receiver, &c.

The act to facilitate the collection of debts against corporations, passed March 19, 1852, provides, (§ 2,) that the *receiver* of any *mutual insurance company* " shall have full power, under the authority and sanction of the court appointing him, to make all such assessments on the premium notes belonging to such corporation as may be necessary to pay the debts of such corporation, as, by the charter thereof, the directors of such corporation have authority to make."

Assessments made by a receiver, under the authority and sanction of this court, pursuant to this statute, are probably binding and conclusive upon all the members of the insurance company for which the receiver is acting, until set aside on motion, or reversed upon appeal.

But though this is technically true, it obviously involves, so far as it allows the receiver to present an *ex parte* petition, obtain an *ex parte* order for the making of an assessment, and an *ex parte* confirmation thereof, a species of practical injustice.

It would seem, from the vast flood of litigation growing out of the failure of these companies, which has deluged the courts in some places, for the last few years, that there is something radically defective in the scheme of organizing and conducting these corporations, or in the judicial proceedings which have been adopted to close up their affairs when insolvent.

After the order of sequestration is made, and the receiver appointed, it is no more than just that, before any assessments are made or suits commenced against any individual member upon his premium note, he should have *a day in court*.

Therefore, there should be, in all these cases, a *reference* to some suitable person, to ascertain the situation of the company at the *time of the* sequestration, the nature and amount of its debts and liabilities, and what amount it is necessary to raise by assessment to meet such debts, and also to pay off or cancel any outstanding policies, and also to pay all the proper costs and expenses of the receiver.

And a like reference should be had whenever it is necessary to make any other or further assessment.

The referee should publish, in newspapers calculated to give proper information, a notice of the time and place fixed by him to proceed upon such reference, stating the object of the reference, &c.

*Steuben Circuit and Special Term, Jan.*, 1857

APPLICATION by C. W. Campbell, receiver of the Steuben Farmers' and Merchants' Insurance Company—a mutual insurance company under the act of 1849—for authority to make an assessment upon the premium notes, to pay the debts of the company, with the expenses of executing the trust, &c.

The receiver had been duly appointed under § 36 of article 2, chapter 8, of the 3d part of the Revised Statutes, upon the application of a judgment-creditor, upon the return of an execution against the company unsatisfied.

G. H. M'MASTER, *for receiver.*

E. DARWIN SMITH, Justice.   The flood of litigation which has been let loose upon the courts of this state within the last few years, from the failure of the numerous companies organized for mutual insurance against fire, upon the pattern of the act to incorporate the Jefferson County Mutual Insurance Company,—(*Laws of* 1836, *p.* 42,)—and under general acts of 1849 and 1853, providing for the incorporation of insurance companies, proclaims that there is something radically defective in the scheme itself—in the mode in which these corporations have been organized and conducted, or in the judicial proceedings which have been adopted to close up the affairs of the insolvent corporations.   The remedy is probably with the legislature.   On the presentation of the petition in this matter, I refrained from making any order at the time, and retained the papers to see if anything could be done by the court to facilitate the proceedings of the receiver in closing up the affairs of this particular insurance company, and in saving litigation.

Section 2d of this act to facilitate the collection of debts against corporations, passed March 19, 1852, provides that the receiver of any mutual insurance company " shall have full power under the authority and sanction of the court appointing him, to make all such assessments on the premium notes belonging to such corporation as may be necessary to pay the debts of such corporation, as, by the charter thereof, the directors of such corporation have authority to make."

In the matter of Chas. W. Campbell.

Assessments made by a receiver, under the authority and sanction of this court, pursuant to this statute, are probably binding upon all the members of the insurance company for which the receiver is acting, and are, I think, conclusive upon all such members, until set aside on motion, or reversed upon appeal. (12 *Barb.* 674; 10 *Paige*, 382.)

But, though this is technically true, it obviously involves, so far as it allows the receiver in these cases to present an *ex parte* petition, obtain an *ex parte* order for the making of an assessment, and an *ex parte* confirmation thereof, a species of practical injustice. The receiver may do nothing amiss, and yet assessments thus made and confirmed will be very likely to cause dissatisfaction and produce litigation. And such a course of proceeding is most obviously liable to abuse. Every judge who has had occasion to try any of these insurance cases at the circuit, must have heard complaints in respect to these assessments. And I cannot but think that assessments incautiously authorized and confirmed, if not improper in themselves, and excessive and extortionate, have provoked much of the litigation which, in some places has blocked up the courts. The amount of these assessments in most instances have been small, and yet we have seen many good citizens, rather than pay a small assessment of $5 or $10, incur and pay willingly ten times that amount, and upwards, for the luxury of a good law-suit. This has proceeded, doubtless, from a conviction that there was something wrong in the transactions of the company, or of the receiver, or in the making of the assessments. The receiver represents the corporation in its aggregate character; he exercises, by the act aforesaid, under the authority and sanction of this court, the powers conferred in the charter upon the directors of the company, and executes the trust to them confided. If through him all the members are before the court, and are bound by every adjudication in respect to it—as was held by Mr. Justice SHANKLAND in the case cited in 12 *Barb.* 674—still, it strikes me that this complex relation of representing both the corporation and the individual members may be strained too far. In so far as he is proceeding to make as-

sessments upon the individual members, and to sue them, he stands in an adversary position to them individually. For this reason, after the order of sequestration is made, and the receiver appointed, it seems to me that it is no more than just, that before any assessments are made, or suits commenced against any individual member upon his premium note; he should have a day in court—an opportunity to see and know the condition of the corporation, the nature and extent of its debts and liabilities, and the amount which it is necessary to assess upon the members to discharge such debts and liabilities, and the expenses of executing the trust of the receivership.

Two assessments must necessarily be made in all these cases. The first assessment must be upon all the premium notes, as every member is to pay in proportion to the amount of his premium note. The first assessment should, therefore, be for all losses incurred at the time, together with the expense of collecting, and the amount necessary to be paid, if any, to cancel outstanding policies. All the members of the corporation, liable to assessment on their premium notes, ought to have notice before the making of this assessment, as then certainly, upon the confirmation of the assessment, they will be concluded by the adjudication of the court upon the amount of the debts and expenses, and the principal and amount of the assessment. A second assessment will be necessary to meet a deficiency of funds to pay the losses arising from the insolvency of some of the members, under the decision in *Bangs* agt. *Gray*, (2 *Kern.* 477.) The facts upon which this second assessment is to be made, the efforts and the inability to collect the previous assessments, should be judicially ascertained and determined when or before the assessment is ordered. When this is done, there will be little room left for litigation or controversy between the receiver and the individual members of the corporation.

There should, therefore, in my opinion, in all these cases, be a reference to some fit person, to ascertain the situation of the insurance company at the time of the sequestration, the nature and the amount of its debts and liabilities, and what amount it is necessary to raise by assessment to meet such debts, and also

to pay off or cancel any outstanding policies, and also to pay all the costs and expenses of the receiver in the execution of the trusts to him committed : and a like reference should be had whenever it is necessary to make any other or further assessment.

The referee should publish a notice of the time and place fixed by him to proceed upon such reference, to be published in such newspapers as he shall think will be sufficient to give full and proper notice of the proceeding, stating the object of such reference, and that all persons interested therein are at liberty to attend upon the execution of such order, and all persons having premium notes liable to be assessed should be at liberty to attend the referee on such reference, and to except to his report, and oppose its confirmation, at their own expense.

I shall so order in this case, and direct such notice to be published by the referee for four weeks successively, in each of the public newspapers printed in the county of Steuben, before the time fixed to proceed upon such reference.