HYATT, receiver of the Rensselaer Insurance Co., *vs.* McMAHON.

The 14th section of the act of 1849, to provide for the incorporation of insurance companies, will authorize a pre-existing mutual insurance company to change its name, and extend its charter, by complying with the provisions of the statute.

Where a plaintiff claims title to a note sued on, by virtue of his appointment as receiver of an insurance company, the note being payable to a company bearing a different name, it is necessary that he should, by proper averments, show that the note is a part of the assets of the company of which he has been appointed receiver.

And if the name of the company to which the note was given has been changed since the giving of the note, by virtue of the authority conferred by the statute, to that of the company on whose behalf the plaintiff sues, it is sufficient for the plaintiff to aver that the company was originally incorporated, and transacted business, by its former name; that under and by virtue of the act of April 10, 1849, it reorganized, amended its charter, and changed its name to that which it now bears, and continued to transact business under such

Hyatt *v.* McMahon.

amended charter and name; that the plaintiff was, in a suit commenced against the corporation by its new name, appointed the receiver thereof; setting out the proceedings taken for that purpose.

The averment as to reorganization is of a fact, and not of a conclusion of law. And in alleging a fact, it is not necessary to state such circumstances as merely tend to prove the fact.

Where a complaint upon a promissory note averred that the Rensselaer County Mutual Insurance Company was a corporation duly organized; that the defendant made the note, promising to pay that company, and thereby became a member of the company; that the corporation transacted business under that name from the date of its incorporation until October 23, 1851, when it changed its name to that of the Rensselaer Insurance Company, under which name it continued to transact business until February 19, 1855; that a judgment was recovered by one S. against the said Rensselaer Insurance Company, and the plaintiff was appointed receiver of said corporation; and that he became invested with all its assets, including the note in suit; *Held* that the complaint stated facts sufficient to constitute a cause of action, so far as related to the transfer of the title to the note.

*Held also,* that whether the name of the corporation was legally changed or not, was immaterial in such action. That neither the corporation, nor any member of it, nor any person dealing with it under the new name, could take advantage of the misnomer.

Where the legislature, in granting a charter to an insurance company, reserved the right to alter it, and they subsequently exercised that right by declaring that if the assets of such corporation should pass into the hands of a receiver he should make assessments upon the premium notes; *Held* that this was a legitimate exercise of the reserved power, and fully authorized the receiver to make assessments upon premium notes whenever it became necessary to do so.

The act of 1852, purporting to authorize receivers of mutual insurance companies to make assessments upon premium notes given before the passage of that act, is not unconstitutional.

DEMURRER to complaint. The action was brought by the plaintiff as receiver of the stock, property, equitable interests, things in action and effects of the Rensselaer Insurance Company. The complaint alleged that the said "The Rensselaer Insurance Company" was originally incorporated under and by virtue of an act of the legislature, passed the 29th of April, 1836, entitled "An act to incorporate the Rensselaer County Mutual Insurance Company." That said company soon thereafter organized, and transacted business as a fire insurance company, in the village of Lansingburgh, in

the county of Rensselaer, under the name and title of " The Rensselaer County Mutual Insurance Company," and under and by virtue of said act of incorporation, from the time or about the time of obtaining its said charter, till on or about the 23d day of October, 1851, at which time the said company reorganized and amended its charter, in pursuance of an act of the legislature, passed April 10, 1849, entitled " An act to provide for the incorporation of insurance companies," and did at that time change its corporate name to that of " The Rensselaer Insurance Company," under which amended charter and name it continued to transact the business of fire insurance at the place aforesaid, till on or about the 19th day of February, 1855. That on or about the 26th day of December, 1854, one Thomas Shaughnessy recovered a judgment in the supreme court of this state, against the said " The Rensselaer Insurance Company," for $416.56, the roll whereof was, on the day last aforesaid, filed, and said judgment docketed in the office of the clerk of the said county of Rensselaer, upon which judgment an execution was subsequently issued to the sheriff of the said county of Rensselaer, who returned the same entirely unsatisfied. That by an order of this court, made on the 19th day of February, 1855, at a special term thereof, upon the application of Shaughnessy, the plaintiff in that suit, the present plaintiff was appointed receiver of the stock, property, equitable interests, things in action and effects of said corporation, upon his executing a bond with the requisite security in the penal sum of $25,000, to be approved by C. L. Tracy, Esq. to whom said matter was referred, which order was certified to the clerk of Rensselaer county, and filed and entered by him together with said bond duly executed and approved, on or about the 6th day of March, 1855. That by virtue of said order, appointing the said plaintiff such receiver, and upon his filing said bond duly executed and approved, he became invested with all the bonds, bills, notes, stocks, property, choses in action and effects of the said corporation, of every name and kind whatsoever, and in pursuance of said order, the directors and officers of said corporation delivered into the possession of the said plaintiff, as such receiver, the

bonds, bills, notes, stocks, property, claims in action and effects of said corporation, together with the note hereinafter mentioned, and the plaintiff is now the holder and owner of the same, as such receiver. That on or about the 31st day of January, 1850, the defendant, for a valuable consideration, made his promissory note in writing, commonly called a premium or deposit note, and then and there at the date in said note mentioned, delivered the said note to the said insurance company, by which note the defendant promised and agreed with the said company in the words and figures following, to wit: "$70.14. For value received in policy No. 5206, dated the 31st day of January, 1850, issued by the Rensselaer County Mutual Insurance Company, I promise to pay the said company the sum of seventy-two dollars and fourteen cents, in such portions, and at such time or times as the directors of said company may, agreeably to their act of incorporation require." Which said policy of insurance was issued and delivered by the said company to the defendant, and thereby the defendant became a member of said company, and continued to be a member thereof, during the time for which said note has been assessed to pay losses by fire, as hereinafter stated.

The complaint, among other things, further alleged, that after the issuing of said policy, and the making of said premium or deposit note, the said company received notice from divers persons of claims for losses or damage by fire, sustained by them respectively, whilst members of said company, and insured therein, on property covered by policies of insurance, issued by said company, which said losses had been in part only ascertained, and that at the time he was appointed receiver the same were due and unpaid, and remained a just and legal claim and debt against said company, and also that since his appointment as receiver as aforesaid, the plaintiff as such receiver, prior to his making the assessments hereinafter mentioned, also received notice from divers persons of further claims for losses or damage by fire, sustained by them respectively, whilst members of said company, and insured therein on property covered by policies of insurance issued by said company; and that after such no-

Hyatt *v.* McMahon.

tice of further claims for losses or damage by fire, and after duly ascertaining the amount of said losses, the said receiver deeming it necessary to make an assessment for the payment of said losses and damages by said members, ascertained the same, and the amount thereof for which said company was liable, and did on or about the 10th day of November, 1855, by the direction, and under the authority and sanction of the court which appointed him receiver as aforesaid, assess, settle and determine the sums to be paid upon the original amount of all the premium or deposit notes belonging to, or in the possession of said plaintiff, as such receiver, liable to such assessments, and upon the members of said company, in proportion to the original amount of their premium or deposit notes respectively, and did settle the sums to be paid by the several members of said company, as their respective portions of such losses, and the incidental expenses of making and collecting said assessments, in proportion to the original amount of his or their deposit note or notes, so far as said notes were found sufficient for those purposes, and did order and require the sums so determined, settled or assessed, to be paid by the members of said company, whose premium or deposit notes were so assessed, to be paid to the receiver of said company pursuant to said act of incorporation, said amended charter, the by-laws of said company, and the statute in such case made and provided; by which said assessments and determination of the receiver as aforesaid, the defendant was assessed upon said premium or deposit note, the sum of $68.53, and which was by order of the court, required to be paid as aforesaid, within thirty days after the publication of notice of said assessments, or in default thereof that actions be brought upon said notes against all delinquents, and that notice of such assessments be published as provided in the charter and by-laws of said company. That each and every of the said notes so assessed, were liable to such assessments, and that all the notes then held by the said receiver liable to such assessments, were so duly assessed, their and each of their several proportions of such losses and expenses, so far as they were found sufficient, and that the said company was, at the time of making said assessments, lia-

ble, and for such part as remains unpaid, still is liable, to pay said losses and expenses, and that the said note above set forth, made by the said defendant, was liable to said assessments, and the said assessments on the said note made by the said defendant, were made for losses or damage by fire, which occurred only whilst said note and said policy of insurance therein mentioned were in full force and. effect, including the incidental expenses of making and collecting the same; and that due notice of said assessments was published in the manner prescribed by the said amended charter and by-laws .of said company, and were made payable to the receiver within thirty days after publication of said notice, and that more than thirty days have elapsed since the publication thereof. And that the plaintiff before the commencement of this action did require the defendant to pay to said plaintiff the sum of $68.53, so assessed by the said receiver, as his proportion of said losses and expenses upon said premium or deposit note, and as a portion of the sum in said premium or deposit note mentioned; of which said assessments and notice and requirement to pay, the defendant had due notice; but that he neglected and refused to pay the assessments. By reason whereof, and by force of the statute, and of said act of incorporation, of said amended charter, the by-laws of said company, the tenor and effect of the note aforesaid, and the requirements and consideration of said policy of insurance, and by force of the statute in such case made and provided, the defendant became liable to pay to the said plaintiff the whole amount unpaid of said deposit note so made and delivered by the defendant to the company as aforesaid. Promise to pay, and breach. Demand of judgment upon said note for the sum of $68.84, together with interest on the same, to the amount of said assessments, from the 10th day of August, 1856, besides costs.

To this complaint the defendant demurred, and alleged as grounds of demurrer; 1st. That it did not appear from the complaint that the money specified in the premium note set out in the complaint, or any part of it, was due and unpaid to the plaintiff. 2d. That it did not appear from the complaint, that

Hyatt *v.* McMahon.

the condition precedent contained in said note had been performed or complied with. 3d. That it did not appear from the complaint that the directors of the company in said note mentioned had, agreeably to the act of incorporation, required payment of the money therein specified, or any part or portion thereof. 4th. That it did not appear from the complaint, nor was it therein alleged, that the premium note was, or ever had been duly assessed. 5th. That the complaint did not state or allege facts sufficient to constitute a cause of action. ·

*C. F. Tabor*, for the plaintiff.

*A. Bockes*, for the defendants.

ROSEKRANS, J. The 14th section of the act of 1849, to provide for the incorporation of insurance companies, (*Laws of* 1849, *p.* 447,) although unskillfully and inartificially drawn, will, nevertheless, in my judgment, authorize a pre-existing mutual insurance company to change its name and extend its charter, by complying with the provisions of the statute. It provides for such extension by altering or amending the charter so as to accord with the provisions of the act, and filing a copy of the charter so altered or amended in the office of the secretary of state, with the consent and declaration mentioned in the 14th section, and thereupon such proceedings shall be had as are required by the 11th section of the act. The 11th section requires the examination of the charter by the attorney general, and he is to certify it to the comptroller, who is to examine personally, or by persons to be appointed, as to the capital, premiums or engagements for insurance, and on filing the proper certificate in the office of the secretary of state, he is to furnish the corporation with a certified copy of the charter and other papers filed, and upon filing these papers in the office of the clerk of the county where the company is to be located, the corporation may commence business. This charter is, by the 10th section of the act, to declare, amongst other things, *the mode and manner in which the corporate powers under the act are to be*

*exercised.* Although this language may have been intended primarily to require a statement whether the company proposed to transact business as a joint stock or as a mutual insurance company, it is not necessarily restricted to that subject. The language is general, and includes all other matters relating to "the mode and manner of transacting business," as well as the character of the proposed company. The name of the corporation must necessarily be contained in the charter; and I can see no objection to giving to the words their full meaning, and thus allowing a change of name. In the case of *The Queen* v. *The Registrar of joint stock companies*, (10 *Adol. & Ellis, N. S.* 839, 59 *Eng. Com. Law Rep.*,) under an English statute of a similar nature, the court refused a mandamus to compel the registrar to receive and file a return of a joint stock company, changing its name; but the decision was put partly upon the language of the statute, which declared that a joint stock company, incorporated under the statute, "should continue so incorporated until it should be dissolved," and partly upon the ground that a change of name would bring into confusion the title to shares and the liabilities on contracts, and the right to assets. The statute of 1848, under consideration, contains no such language as that in the English statute; nor are there any shares in mutual insurance companies to be affected by the change of name. The rule in the case cited, might be adopted when the comptroller, attorney general or secretary of state should refuse to proceed, under a proposed charter containing a change of name of a pre-existing corporation; but to adopt it after such change has been allowed, would not only produce confusion but destruction of titles, liabilities and rights; and after such change the apprehended confusion may be obviated entirely by proper averments and proofs. It is insisted that the complaint is defective in not stating a performance of the several acts required by the statute, in order to effect a re-organization of the company. The plaintiff claims title to the note in suit by virtue of his appointment as receiver of the Rensselaer Insurance Company, the note being payable to the Rensselaer County Mutual Insurance Company. And it is neces-

Hyatt *v.* McMahon.

sary that he should, by proper averments, show that the note is a part of the assets of the company of which he has been appointed receiver. If, after the making of the note, the name of the corporation had been changed by a special act of the legislature, it would have been sufficient for the plaintiff to aver that such act was passed, and that he was appointed receiver of the corporation by its new name, setting out the proceedings taken for that purpose. And if my construction of the 14th section of the act for incorporating insurance companies, as to the power to change the name of a pre-existing company, is correct, I do not perceive why, by the same rule, the general averment contained in the complaint as to the re-organization and alteration and amendment of the charter of the Rensselaer County Mutual Insurance Company, including change of name, is not sufficient. The statute is a public statute, and the court will take notice of its provisions. The averment as to re-organization is of a fact, and not of a conclusion of law. In alleging a fact, it is not necessary to state such circumstances as merely tend to prove the fact. The due allegation of the fact, without detailing a variety of minute circumstances which constitute the evidence of it, will be sufficient. (1 *Chit. Pl.* 225. *Wooden* v. *Strew,* 10 *How. Pr. R.* 48. 50.) The averment complained of answers the purpose of pleading—of informing the opposite party and the court of the facts intended to be relied upon to sustain the action, and includes all the particulars mentioned in the 14th section of the statute, necessary to be complied with to constitute the reorganization of the company and the amendment of its charter; and the defendant can raise an issue, by his answer, as to a compliance with any or all of these particulars. There are adjudged cases which I think justify this general manner of pleading. In *Herkimer County Bank* v. *Furman,* (17 *Barb.* 116,) it was averred that the Astorogan manufacturing company was a corporation, formed under the general law providing for the incorporation of such companies, and *that on a certain day it was dissolved.* The dissolution, by the terms of the act, was required to be by resolution of the board of directors. (17 *Barb.* 120, *note.*) The complaint was demurred

to, upon the ground that it did not show that the company was duly incorporated, and that the manner of dissolution was not set forth; and the demurrer was overruled. In the case of *The People ex rel. Crane* v. *Ryder*, (2 *Kern.* 443,) the complaint alleged that an election was duly and legally held, pursuant to the statute, and that the relator was duly and legally elected county judge, and on demurrer it was held that this was a statement of facts, and not of conclusions of law. In *Brouwer, receiver*, v. *Appleby*, (1 *Sand.* 168,) the court intimate that the rule of pleading and evidence, as to incorporation, is applicable in an action by a receiver of a corporation. See also *Hill* v. *Reed*, (16 *Barb.* 280, 284,) where, in an action by an assignee, averments as general as those in the complaint in this case, upon demurrer urging the same objections as those urged in the case under consideration, are held sufficient. But if the averment in the complaint which has been considered is treated as surplusage, I think the complaint states facts sufficient to constitute a cause of action, so far as regards the transfer of the title to the note in suit. It is averred that the Rensselaer County Mutual Insurance Company was a corporation duly organized; that the defendant made the note promising to pay that company, and thereby became a member of the company; that the corporation transacted business under that name from the date of its incorporation until October 23d, 1851, at which time it changed its corporate name to that of the Rensselaer Insurance Company, under which name it continued to transact business until February 13, 1855. It then states the recovery of the judgment by Shaughnessy against the said Rensselaer Insurance Company, and the appointment of the plaintiff as receiver of said corporation, and the delivering of its assets, including this note, to the plaintiff, as such receiver. It is evident from the language of the complaint, that the pleader intended to state that there was but one corporation transacting business under these two different names. Whether the name of the corporation was legally changed or not I deem a matter of no moment, in this action. Neither the corporation nor any member of it, nor any person dealing with it

under the new name, could take advantage of the misnomer. (*Ang. & Ames on Corp.* §§ 99, 100 *and notes*, 645, 648 *and notes. African Society* v. *Varick*, 13 *John.* 38.   12 *Barb.* 674, 5.) Chancellor Kent says, (2 *Kent's Com.* 341, 8*th ed.*)   "The general rule to be collected from the cases is, that a variation from the precise name of the corporation, when the true name can be collected from the instrument or is shown by proper averments, will not invalidate a grant by or to a corporation or a contract with it ; and the modern decisions show an increased liberality on this subject.   For a corporation to attempt to set aside its own grant by reason of a misnomer in its own name, was severely censured, and in a great measure repressed, as early as the time of Lord Coke."   If a corporation cannot avail itself of such misnomer, neither could a member of the corporation.   (10 *Adol. & Ellis*, 843, *supra.*   8 *East,* 492.)

Another objection to the complaint is, that the receiver has no power to make an assessment upon the premium notes belonging to the corporation ; that by the terms of the contract, it can only be made by the directors of the company; that the act of 1852, (*Laws of* 1852, *p.* 67,) purporting to authorize receivers of mutual insurance companies to make assessments, is unconstitutional and void as to notes given before the passage of that act, (as was the case with the note in suit.)   The conclusive answer to the objection of unconstitutionality of the act is, the power reserved to the legislature, by the charter of this company and the general act under which it was re-organized, to alter or repeal the charter.   The obligation of the contract was that the maker of the note should pay his proportion of losses and expenses of the company, in proportion to the amount of his premium note.   (*Laws of* 1836, *p.* 275, §§ 43, 44.)   The note was made payable at any time when the directors should deem the same requisite for the payment of losses and incidental expenses.   (*Ch.* 43, § 6.)   And when notices of losses were received or judgment obtained against the company, for losses, the charter provided (*id.* 45, § 10) that the directors should settle and determine the sums to be paid by the several members of the corporation as their respective proportions of such

Hyatt *v.* McMahon.

losses. It has been said that the assessment is not a judicial but a ministerial act, and may as well be performed by a receiver as by the directors. (14 *Barb.* 373.) But whether this be so or not, the legislature, when they granted this charter, reserved the right to alter it, and the corporation and its members accepted the charter and assumed their obligations under, and subject to, this reserved right. In 1832 the legislature exercised this right, by declaring that when the assets of such corporation passed into the hands of a receiver he should make the assessment, instead of the directors. This was a legitimate exercise of the reserved power, and a necessary exercise of it to secure the rights of the creditors of an insolvent corporation. If not necessary, it was convenient at least, and was reserved. Even if it increased the liability of the members, as it does not, it would be valid. (10 *Barb.* 260.) The extent to which this reserved power may be exercised has not been distinctly adjudged. It need not be claimed to be without limit, or that it may be capriciously or wantonly exercised, but it may safely be affirmed that it may be exercised in all cases, and to any extent, to carry out the original purposes of the incorporation, and to secure the due administration of justice in regard to the rights of the creditors of the corporation and the proper disposition of its assets. (*Northern R. R. Co.* v. *Miller,* 10 *Barb.* 282. *Schenectady and Saratoga Plank Road Co.* v. *Thatcher,* 1 *Kern.* 102, 114, 115. *White* v. *Syracuse and Utica R. R. Co.* 14 *Barb.* 560, 561. *Troy and Rutland R. R. Co.* v. *Kerr,* 17 *Barb.* 603, *remarks of Hand, J.*) Assessments by receivers have been sanctioned by the courts. (*Bangs* v. *Gray,* 15 *Barb.* 264; *S. C.* 2 *Kern.* 477. *Hyde, receiver,* v. *Lynde,* 4 *Comst.* 387. *Devendorf* v. *Beardsley,* 23 *Barb.* 656, 666.)

Judgment upon demurrer in favor of the plaintiff, with leave to the defendant to answer on payment of $35 costs.

[Washington Special Term, September 22, 1857. *Rosekrans,* Justice.]