WILLIAM H. ALLEN, Respondent, *v.* LIFE ASSOCIATION OF AMERICA, Appellant.

November 18, 1879.

Where a charter provision of an insurance company giving the right to the assured to surrender his policy and receive therefor a certain consideration, is, in accordance with other provisions of the charter, abrogated, the assured, having taken his policy with notice that this change might be made, cannot complain that his contract has been changed against his consent.

APPEAL from the St. Louis Circuit Court.

*Reversed and remanded.*

IRWIN Z. SMITH, for the appellant, cited: *Currie* v. *Assurance Soc.*, 4 Hen. & M. 315; *Hyatt* v. *McMahon*, 25 Barb. 457; *Schrick* v. *Building Co.*, 34 Mo. 423.

BROADHEAD, SLAYBACK & HAEUSSLER, for the respondent, cited: *Woodford* v. *Ashville*, 6 Jones L. 558; *Insurance Co.* v. *Rand*, 24 N. H. 428; *Insurance Co.* v. *Connor*, 17 Pa. St. 136; *Insurance Co.* v. *Butler*, 34 Me. 451; *Pulford* v. *Fire Department*, 31 Mich. 458.

BAKEWELL, J., delivered the opinion of the court.

This action is upon a policy of insurance, dated April 29, 1870, on the life of William H. Allen, for the sum of $10,-000, to be paid on June 6, 1916, or if the assured shall die before that date, to be paid to his wife or her legal representatives. The policy provides that if, after the payment of two or more annual premiums, the assured fails to pay further premiums, the policy becomes a paid-up policy for a sum equal to as many tenth parts of the sum insured as there shall have been annual premiums paid.

The petition alleges the payment of five annual premiums, amounting to $2,263.40, and that on failure to pay the sixth premium, due on April 29, 1875, the policy became a commuted policy for $5,000; that, by the terms of the charter in force when the policy was issued, the company was to do business only on the mutual plan, and

each policy-holder was a member of the company, and it was provided that whenever any member, after payment of one or two premiums, shall surrender his policy, he shall receive, in consideration of his surrender, a sum equal to ninety per cent of the actual reserve of said policy, after deducting his indebtedness to the company. On April 20, 1878, plaintiff, according to the terms of his contract, offered to surrender his policy, and demanded from the company $1,626.20, being ninety per cent of the reserve of the policy, plaintiff not being then indebted to the company. Defendant refused to accept the surrender or to pay the sum demanded.

Defendant sets up in its answer that the above provision of its charter is not part of the contract; that the policy alone contains the whole contract; that the provision in question was a mere temporary privilege to such policy-holders as should choose to accept the provision whilst it remained in force; that the provision remained in force until September 30, 1872; that defendant is a mutual company, having no capital stock, and the provisions mentioned above as to surrendering the policy were created by the policy-holders, and subject to modification; that the policy-holders did, whilst plaintiff held his policy, change them, and entirely abrogated them by a new charter, adopted by the members July 12, 1877, in accordance with the provisions of the law of the State. Defendant says that plaintiff did not demand the surrender value of his policy until the privilege was withdrawn, and that he has now no rights under his policy, unless he live until 1916.

A demurrer was interposed to this answer, as not being sufficient in law; the demurrer was sustained, and judgment was rendered for plaintiff.

The insurance law of this State in force at the time this policy was issued (Acts 1869, p. 31; Wag. Stats. 742, sect. 15), provides that any company organized for the purpose of making assurance upon lives may amend its charter. It

is contended, however, that a mutual company has no right, without the consent of a corporator, to impose any new condition affecting the contract of insurance made by him with the company to his injury, as by any *ex post facto* by-law or otherwise.

It is, however, expressly ruled in Missouri, in *Shrick* v. *St. Louis Mutual House-Building Company*, 34 Mo. 423, that a corporation authorized by its charter to make such by-laws as may be necessary to attain its objects, may change such by-laws so as to affect the rights of the stockholders under the previous by-law. In that case, the plaintiff was a member of a building company; and, having paid his monthly instalments for five months, he then neglected to make further payments; and, according to the by-law in force when he became a member, he demanded of the company the amount actually paid by him. The by-law had in the meantime been repealed, and the court held that the right to demand repayment was therefore gone.

The principle of the case just cited seems to be decisive of the one at bar. Nor is it perceived that it violates any known rule as to enforcing the obligation of contracts. The plaintiff took out his policy with notice that the charter was subject to change, that the provision upon which he relies was a charter provision, and that it was competent for the policy-holders of defendant, of whom he was one, to make any change in the charter not in violation of the laws of the State. The change seems to have been made by the assent of plaintiff; since, by becoming a member of the company, he agreed that a change in this charter provision might be made. So, where the Legislature reserves to itself the right to amend a charter, the subscriber of stock in a railroad corporation is not discharged from liability because the charter is subsequently changed, since the alteration is a part execution of the contract into which the subscriber entered. *Northern R. Co.* v. *Miller*, 10 Barb. 283. And where, by the charter of a mutual company, the directors

alone were authorized to make assessments on mutual notes in proportion to the losses and expenses of the company, yet where the right to alter the charter was reserved, and the Legislature exercised this right by declaring that the assessments might be made by a receiver, it was held that this was the exercise of reserved power, and valid, even if it increased the liability of the members. *Hyatt* v. *McMahon,* 25 Barb. 468.

*Currie* v. *Mutual Assurance Company,* 4 Hen. & M. 315, was decided in Virginia in the beginning of this century. By the organic law of the corporation in that case, every member became the insurer of every other member; the charter, however, provided that the society might alter and amend its regulations; and, on application to the Legislature, the charter was so changed that country members were to be alone liable for losses in the country, and *vice versa*. Currie, who had become a member under the original charter, was assessed, as holding a policy on a building in the town where the loss occurred, for a loss in that town; and it was held that he was liable, and that there had been no such change in the nature of the risk after the policy was effected, and without the consent of the insurer, as to determine the contract, inasmuch as Currie, when he became a member of the company, was fully apprised of the right to change the rules and regulations of the company, and that the country members might possibly be released from liability for losses in the town. This is certainly an extreme case. It was, however, considered, and was argued before the Supreme Court of Appeals, by men whose names are historic.

That a corporation has no right, by a by-law, without his consent, to dispense with a contract in which the corporator is one party and the corporation is another, is true. The assent of the contracting corporator to such an unreasonable by-law cannot be presumed. But the case before us is not one of that character. There is no attempt here

to change the contract against the consent of the assured. As a contracting party, the assured stood to the company as any other third person; and the company could no more change their contract with him without his consent than he could change it without theirs. But the policy does not contain the provision for surrender, and if we look at the charter to ascertain the entire contract, and find there the provision as to surrender, we find also that that charter was subject to modification at the will of the company, and that the provision as to surrender there contained was also there subject to modification. The case of *Insurance Company* v. *Connor*, 17 Pa. St. 136, cited by respondent, seems not to be in point; because that was an attempt to forfeit a policy for non-compliance with a by-law — necessarily a rule to regulate future conduct— made after the policy was in force. The court holds in that case that a mutual company cannot forfeit a policy for non-compliance with a by-law as to payment of interest on premium-notes made after the policy was issued. It held the by-law unreasonable and oppressive, and a penalty which the company had no right to impose. And so, in *Beadle* v. *Mutual Insurance Company*, 3 Hill, 161, it is doubted whether terms of forfeiture not mutually agreed to can be imposed by the company in the form of a by-law. And *Insurance Company* v. *Harvey*, 45 N. H. 292, goes no further than this : that assent will not be presumed to a by-law made after the contract, impairing the plaintiff's rights under the agreement and in conflict with the charter.

· We certainly adhere to the doctrine that votes and acts of the corporation cannot deprive plaintiff of rights which he claims, not as a corporator, but as a contractor with the corporation; but where the charter of a mutual insurance company confers upon those making a contract of insurance with the company the right of surrendering their policies on certain terms, if that charter may, by its terms or by the existing law of the State, be changed on applica-

tion of the members, and is accordingly so changed as to abrogate the provision as to the surrender of policies, the policy-holder cannot complain ; *hæc in fœdera venit.* His contract was, in the absence of any express agreement to the contrary, that this privilege of surrendering his policy should last until the provision of the charter granting it should be changed.

We think the defence set up in the answer in this case sufficient in law. The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.