ALBANY,
March, 1835.

In the matter
of Bunch.

In the matter of ROBERT BUNCH, a non-resident debtor.

*Trustees*, under the act authorizing proceedings against *absconding, concealed, and non-resident debtors*, are entitled to their commissions upon such sum as, on *compromise*, is paid by the debtor to the attaching creditor, although such money did not come *to the hands* of the trustees,

They are also entitled to *costs* accrued in the prosecution by them of a *certiorari*, although the decision of the *commissioner* be confirmed by this court; and to *counsel-fees* paid out by them to a reasonable amount. See *items* in this case and amounts allowed.

March 5.       A *warrant of attachment* was issued in this cause in August, 1830, at the instance of C. Mitchell, to whom Bunch was indebted upwards of $42,000, by judgment obtained in this court in 1822. Trustees for all the creditors of Bunch were duly appointed in June, 1831, who took the oath prescribed by law, caused their appointment to be recorded, and notice thereof to be published in the manner prescribed by statute. The trustees caused Bunch to be brought before the officer who had issued the warrant of attachment, *to be examined relative to his estate,* &c. and on such examination the officer overruling certain inquiries made by the trustees, they sued out a *certiorari* removing the proceedings into this court for the purpose of reviewing his decisions. While the *certiorari* was depending in this court, to wit, on the the 20th November, 1832, an arrangement took place between the attaching creditor and the debtor : Bunch drew a bill of exchange on the firm of *Bunch & Co.* of Carthagena in Columbia, for $19,988, 21½ cents, (*fifty* per cent. of the principal of the original debt) payable four months after date, at the office of Robert Lenox & Son, in New-York, which was *accepted,* and delivered to Mitchell; who, in consideration thereof, executed to Bunch a *general release of all* demands, acknowledged satisfaction of the judgment he held, and signed a consent that the attachment and all proceedings had thereon might be superseded and discharged. In pursuance of which, application was made to this court in February, 1833, for a *supersedeas* to the attachment, which was resisted by the trustees : but the court granted a rule that the attachment and all proceedings had

thereon be set aside, on payment to the trustees of all *expendi-*  <span style="float:right">ALBANY,</span>
*tures* by them incurred, and of all *liabilities* and *responsibilities*  March, 1835.
they were under ; and on payment of the *commissions* to which  In the matter
they were entitled on the amount of the debt paid and satisfi-  of Bunch.
ed by the debtor to the attaching creditor ; *provided* that with-
in three months from the entry of the rule, no *other creditor* of
Bunch should cause himself to be made attaching creditor, in
pursuance of the provisions of the statute. The bill of ex-
change received by Mitchell, when it fell due, viz. on the 23d
*March*, 1833, was protested for non-payment. In *April* fol-
lowing Mitchell endorsed the bill to his *agents*, Messrs. Rob-
ert Lenox & Son, who on the same day put their names upon
it, and transmitted it to their correspondents in Carthagena,
where it was paid on the 11th *May*, 1833. In the mean time,
no settlement having been made with the *trustees* in pursu-
ance of the rule of February, 1833, the proceedings brought
into this court by *certiorari* were reviewed by the court, and the
decisions of the officer who had issued the warrant of attach-
ment approved and confirmed ; after which the trustees took
measures to remove the case into the court for the correction
of errors, by obtaining leave to make up a record, but no fur-
ther proceedings were had for that purpose. No property was
seized under the attachment, and no moneys from the estate
of the debtor ever came to the *hands* of the trustees. In Jan-
uary last, the trustees had a bill of their *expenditures, respon-
sibilities* and *commissions* taxed by the clerk of this court in the
city of New-York, (counsel for the debtor attending the taxa-
tion.) The *commissions* were taxed at 1059,54, (which is
5 per cent. upon the *half* of 42,381,66, the principal of the
*judgment* obtained by Mitchell against Bunch,) and the *expen-
ditures* and *responsibilities* at $299,38, making a total of $1358,
92. From this taxation the counsel for the debtor appealed to
this court.

The principal items of the bill as taxed for *expenditures*, &c.
related to the costs of suing out the *certiorari*, and the subse-
quent proceedings had thereon. The counsel for the debtor
insisted that the decision of the judge, who issued the war-
rant, having been *confirmed* by this court, it was manifest that

the *certiorari* had been sued out by the trustees in their own wrong, and without just cause, and that the debtor therefore ought not to be subjected to the expense growing out of that proceeding. If these charges were proper, he then objected in *detail* to an *allowance* of $60 *for counsel fees.* The trustees had charged counsel fees: attending on the examination of the debtor before the judge five successive days, $50; arguing *certiorari*, $25; and attending to special motions before the court at three different times, $15; making a total of $90, from which the clerk requested $30, and allowed the residue. The counsel insisted that one of the trustees being a counsellor of this court, ought to have attended in person to the case, and ought not to have employed other counsel; and it was also said, that as in the bill of taxable costs, not less than seven counsel fees were charged and allowed for as many terms, no additional counsel fees should have been allowed, As to the *commissions*, it was insisted, that none ought to have been allowed under the provision of the statute, which is: "*out of the moneys in their hands,* the trustees may first deduct all the *necessary disbursements* made by them in the discharge of their duty, and a *commission* at a rate of five per cent, on the whole *sum which shall come into their hands.*" 2 R. S., 46, § 29. Here, not a *cent come to the hands of the trustees;* no property was seized under the attachment which had been converted into money, nor had the trustees possessed themselves of any moneys, belonging to the debtor, found in the hands of third persons. It was true, a bill of exchange had been paid by a mercantile house in South America; but for aught appearing, such payment had been made solely as a gratuity to relieve Bunch from his embarrassments.

In answer, it was said, that as there was no complaint that the certiorari had been sued out in *bad faith*, or with the view of creating expense, its result could not affect the claim of the trustees to indemnity: they were not to be subjected to the responsibility of their counsel mistaking the law. In reference to the charge for counsel fees, it was conceded that the taxing officer had erred, but it was said his error laid in the deduction which he had made. Counsel fees were nescessary disbursements, the amount charged in this case was reasona-

ble, and the whole should have been allowed—and that, al- though one of the trustees was a counsellor of this court; for if the services were rendered by him, they were rendered as counsel, and not as a trustee. Counsel fees being charged as *taxable costs*, it was said, did not affect these items, which were for fees actually paid beyond the taxable costs—the fact of payment not being disputed, but only the right itself questioned. In relation to *commissions*, it was said that the right of the trustees to such allowance depended upon the fact, whether any money had been coerced from the debtor in consequence of the proceedings had against him, and not upon the fact of such money having literally come *into the hands* of the trustees. It was undeniable that upwards of $19,000 had been received by the creditor of the debtor; in consideration of which, the creditor executed a release, and signed a *consent that the attachment should be superseded*. It cannot be, that by a combination between the attaching creditor and the debtor, the trustees can be deprived of their commissions.

*By the Court*, SAVAGE, Ch. J. The objections to the taxation resolve themselves into two branches: 1. That the responsibilities that the trustees have come under, by reason of the prosecution of the writ of *certiorari*, are not a proper subject of charge against the debtor; and 2. That, under the circumstances of this case, the trustees are not entitled to commissions. Trustees appointed in cases of this kind are authorized, before making distribution of moneys which shall have come to their hands, to deduct all *necessary disbursements* made by them in the discharge of their duty. The trustees, in this case had the debtor examined before the judge; and being of opinion that they had been improperly restricted in their examination of him, they sued out a *certiorari* to have the decision of the judge reviewed by this court: thus, if they have made *no disbursements* they have incurred *responsibilities* from which they are entitled to be relieved, provided, that in incurring such responsibilities, they acted in good faith. That they did act in good faith, we are bound to presume until the contrary be shown. The same principle applies to the expenses incurred preparatory to the suing out of a writ of error.

ALBANY,
March, 1835.

In the matter
of Bunch.

The charges for counsel fees, also, were properly allowed. Trustees are authorized to employ counsel; and if their disbursements on that account are reasonable, they are entitled to retain such sums as have been paid. The objection here is to the principle, and not that the advances have not been made; the payment itself is not disputed. A deduction of $30 was made by the taxing officer, which probably was made from the *item* of $50 for attendences before the judge on the examination of the debtor; and, in my opinion, properly made. A *trustee*, who is a *counsellor* of this court, is not bound to yield gratuitously his professional services in the execution of his trust; if he renders services in that character, he is entitled to be paid the same as if rendered for another. This disposes of the first branch of the objections.

I have no doubt that the trustees in this case are entitled to commissions. The language of the act is, that trustees may deduct a commission at a certain rate per cent. on the whole *sum which shall come to their hands;* but it would be absurd to give to this provision a *literal* construction. The meaning of the act is, that the trustees shall receive a commission upon such sum as shall be realized in consequence of the proceedings instituted; and can there be a doubt but that the attaching creditor in this case received upwards of $19,000 in consequence of these proceedings? It was in consideration of the creditor consenting to have the attachment discharged, that the bill of exchange was delivered to him. The right of the trustees, in a case like this, to commissions, is analogous to that of a sheriff to poundage upon an execution where, after levy and before sale, the parties compromise. *Hildreth* v. *Ellice,* 1 Caines' R. 192. Besides, it would be grossly unjust, were it permitted to an attaching creditor, by a compromise with the debtor, to deprive the trustees of the only compensation provided for them in cases of this kind. The amount here is large, but it results from the rate per cent. allowed by the legislature; the court has no discretion in the matter. The mischief can be remedied only by legislative enactment; though it may not be amiss to remark, that the compensation of trustees in cases of this kind might well be graduated by the legislature upon a principle similar to that adopted in ref-

erence to executors and administrators. It was suggested on the argument, that for aught appearing, the bill of exchange drawn by the debtor was accepted by the house in Carthagena gratuitously, and not in consequence of the drawer having funds in the hands of the acceptors; and consequently that the sum received by the creditor was not realized from the property of the debtor. There is no force in this suggestion; to give it weight, the fact should have been affirmatively shown, for the presumption of the law always is, that the acceptance of a bill is the admission of funds in the hands of the acceptor.

Upon the whole, I perceive no reason for interfering with the taxation, and the motion is accordingly denied.