Van Brunt, Ch. J.
Merwin, Hulbert & Co., of the city of New York, made an assignment for the benefit of their creditors, October 20, 1880, to Adrian Van Sinderen. The inventories were filed on the 19 th day of November, showing nominal assets of §585,843.44, and actual assets §362,359.69. On November 23, the assignee filed his bond in the penal sum of §100,000. Upon the recording of the assignment, October 20, 1880, the assignee took possession of the estate, which consisted of merchandise and book accounts, and placed in charge thereof a person who had been employed as book-keeper by the assignors as his representative. On November 24, 1880, an order was made to advertise for creditors, which was done. On January 20, 1881, all the creditors executed a composition deed, accepting the notes of the assignors for 60 per cent., and released the assignors and the estate, as well as the assignee and his sureties. No claims were proven before the assignee, and on March 7, 1881, an order was made appointing a referee to take and state the assignee’s accounts. The referee reported on April 1, 1881, and he finds that the assignee received from sales and collections $45,374.53 in cash ; and that the total value of the assets at the time of the assignment was $232,941.08. The referee allowed as commissions to the assignee 5 per cent, upon this amount, and allowed to Mr. J. L. Sutherland, as counsel for the assignee, the further sum of $2,000, in addition to the sum of $2,000 charged in the assignee’s account; and as the fees of the referee $500. Upon the coming in of *286 this report, an order was made confirming the same by .consent of the attorneys for the assignors and assignee, but upon some question having arisen as to the authoiv ity of the attorney for the assignors to appear and make such consent, the matter was re-opened before Mr. Chief Justice Daly, and -on May 27, 1881, an order wras made by the said chief justice, and entered on the following day, whereby the judgment or final decree was vacated and set aside, to the following extent, to wit: 1st. The allowance of $2,000 to John L. Sutherland, as attorney for the assignee, was disallowed. 2d. The allowance of commissions to the assignee was reduced from $11,647.05, or 5 per cent, on $232,941.08, the actual net value of the assigned estate, as fixed by the referee’s report, to $9,743.43, or 5 per cent, on $194,868.76, assumed to be the aggregate amount of the composition notes and the expenses of the assignment. From the above-mentioned order, both the assignors and assignee have appealed to the general term of this court, and the chief question presented by this appeal is how and upon what basis is the compensation of the assignee to be determined. The language of the act is, that the assignee or assignees named in any assignment shall receive for his or their services a commission of jive per cent, on the whole stem which shall have come into his or their hands. Strictly construed, the language of this section would only entitle an assignee to receive commissions, under any circumstances, upon the moneys which have actually come into his possession. No matter how large the estate might be, no matter how great the risks of administration might be, unless the estate was actually reduced to money by the assignee, he would be entitled to receive no commissions whatever. In view of the fact that in this very act there is a provision which requires an assignee to turn over the assigned estate to the assignors, upon the happening of a given contingency, *287 at any stage of the administration, namely, the entering into a composition deed between the assignor and his creditors, whereby such transfer is authorized by such creditors, it is difficult to conceive that the legislature should have intended so rigid and strict a construction to be placed upon the terms of this act.
It would be unjust to say that an assignee should be entitled to no compensation where he had been at the risk of the whole estate, where he had been at the whole trouble of procuring bonds commensurate with the magnitude of the estate, merely because the assignor should have succeeded in procuring a compromise with his creditors before the assignee had the opportunity of reducing the estate into money. Under such circumstances, the assignee is entitled to commissions upon the actual value of the property which - has come into his hands, or he is entitled to nothing. There is no provision of law which in any respect authorizes the court to award the commissions of an assignee upon the ground of quantum meruit.
It may be true that, where a composition is entered into by the assignor, the giving of commissions to the assignee upon the whole value of the estate which has come into his hands, might be an unreasonable compensation. It might exceed that which, in equity, we think the assignee is entitled to receive; but then there are many others where the compensation allowed by law, calculated upon the value of the estate, is no compensation whatever to the assignee for the trouble of administration, and the risks which he has had to assume in such administration. Even if this was an open question, it seems to me that the natural conclusion must be that the assignee, by becoming the trustee, by taking possession of the estate, by filing his bond, and entering upon the duties of his trust, becomes entitled to his commissions, unless he is deprived of them by reason of mal-administration, and *288 that such commissions must be calculated upon the value of the estate, and not merely upon the money which has been collected by him, where there has been a composition deed between the assignor and his creditors, and the assignee has been called upon to turn over the assets which have been administered by him. But this question has been the subject of judicial decision in this State. The language in the assignment act in regard to commissions and that used in the Revised Statutes in reference to the commissions of trustees of absent debtors, is identical, and under that statute it has been held that it is not necessary that money should actually come into the possession of the assignee (Matter of Bunch, 12 Wend. 280).
In that case commissions were allowed at the specified rate on a note for $19,998, though it was received by the creditors in settlement, and never passed through the assignee’s hands ; and it is to be remarked that in that case this was the only evidence of the value of the assigned estate, and as a consequence, commissions could not be collected upon any other amount. But the importance of this decision is, that it is not necessary that the allowance for commissions should depend upon the actual sum which shall come into the assignee’s hands in money. So in the case of the German American Bank v. Morris Run Coal Co. (68 N. Y. 585, 589, 590.)
It is there clearly- stated by the court that trustees under the Revised Statutes could recover their commissions if the proceedings were discontinued and settled before they could sell the property ; and this was because their commissions were the only compensation which they could receive for their trouble and services ; and the court refer with approval to the case In re Bunch, above cited. And the court further hold that “ when a sheriff has an execution under which he has levied upon property and the judgment is paid or *289 settled, he is entitled to his poundage, although he has made no sale of the property. This is because Ms poundage is a full compensation for all his trouble and expenses in taking and keeping the property, and, if deprived of his poundage he would receive nothing.” In the settling of the accounts of executors, stocks, bonds, mortgages and merchandise which have been turned over in the settlement of an estate, are considered as received and paid out for the purpose of computing commissions (Meacham v. Sternes, 9 Paige, 398, 404, 405; Matter of De Peyster, 4 Sandf. Ch. 511). In the case of Van Buren v. Chenango Ins. Co., 12 Barb. 671, it was held that a receiver on surrendering his trust was entitled to commissions on the value of the property in his hands ; and to the same effect is Bennett v. Chapin (3 Sandf. 673). In the case of McWhorter v. Benson (Hopk. 28, 42), the chancellor laid down the rule which has been followed in subsequent cases, that “ the amount and value of the property which is confided to the trustee, and which has passed through his hands, is the basis upon which his compensation is to be computed; that the amount of the estate indicates with sufficient exactness the extent of his labor, care, and services, and their reasonable value ; that a plain rule of calculation is afforded by the amount of the property held in trust, which is comprehensive and simple, and which in ordinary cases is a very just criterion of the value of the services of the trustee; that whatever objections there may be to such a rule, all other plans of compensation are exposed to far greater evils; and if it does not accomplish what is just in all cases, it is because all human methods are imperfect.” It was held by the learned chief justice in his opinion that the aggregate amount of the composition, with the expenses of the trust added, must be taken as the value of the whole estate. I am unable to see upon what *290 basis any suck valuation can be taken, in the face of positive and reliable testimony that the estate was worth much more than the amount of the composition. The assignee has nothing whatever to do with the question of composition; that is a matter between the assignor and his creditors.
The assignee’s commission is not to depend upon how good a bargain the assignor can make with his creditors, but is to depend upon the actual value of the estate which has come into his hands for administration. The burden of the argument upon the part of the counsel for the assignors is, that the statute should be strictly construed, because prior to the statute it had been held that assignees were only entitled to the commissions allowed by statute to executors and administrators, and that the duties of the assignee not being more onerous than those of an executor, it could not have been the intention of the legislature to increase the compensation of assignees, as it had theretofore existed. In regard to this matter the argument that the duties of a receiver are not in any manner more onerous than those of an assignee, might equally be urged, because the legislature has fixed the compensation of a receiver at five per cent. ; and the courts have held that a receiver, when ordered to deliver up property in his possession, was entitled to a commission upon such property (Bennett v. Chapin, 3 Sandf. 673). The difficulty is that a construction of the statute to the letter shows conclusively, as has been hereinbefore stated, that the legislature never intended that an assignee should be confined in his claim for commissions to the actual cash which was received by him into his personal possession ; and in the case of trustees, where such a question has arisen, it has always been held, even where similar language was employed in the statute, that such was not the true construction to be given to it. Now, as has been *291 heretofore said, there is no middle ground as to this question, between the payment of commissions upon the actual value of the property received, and the restricting them to the actual cash received, and it was not, in our judgment, the intention of the legislature, in view of the provisions of- the act allowing a composition, and directing under such circumstances the assignee to transfer the estate to the assignor, to restrict the assignee’s right to commissions simply to money received, (and it must be borne in mind that this language is used in view of decisions which had interpreted similar language in similar statutes). There is but one basis upon which such commissions can be calculated, namely, upon the actual value of the property. We, therefore, think that the learned chief justice erred in cutting down the assignee’s commissions as they were allowed by the referee.
As to the question of counsel fee, under the circumstances of the case, this matter should have been referred back to the referee to take further proof in regard to the services of the counsel for the assignee. Allowances to counsel for assignee, for his services during an accounting, should not be made or disallowed without proof in regard to the services which had been rendered. The fact that the counsel for the assignee had been paid a certain sum with which the assignee charged himself in his accounts, could not deprive him—such charge not being excepted to by any creditor, and no objection being found thereto—of his right to a counsel fee for his services upon the accounting. It was not necessary, where the charge had been admitted to be just, for the want of objection, and the parties now objecting appeared' upon the accounting, that the counsel- for the assignee should prove the value of the services rendered to the assignee prior to the accounting. But when it comes to the charge of a counsel fee upon the accounting, then the referee *292 should have some evidence which he can submit to the court, going to show that the charge in respect to the accounting is a reasonable and proper one. We think, therefore, that in that respect there should have been a reference back to the referee, to take proof in regard to the value of the counsel’s services upon such accounting, and that the counsel should have been allowed in this proceeding the value of such services, without taking into consideration, in view of the facts of this case, any amount which he had received during the course of the administration.
The only other point in respect to which a question has been raised upon this appeal, is that in regard to referee’s fees.
The charge for referee’s fees seems to be large in view of the amount of labor, but I do not see how it can be interfered with upon this appeal, there being no evidence to show that such charge was excessive ; and it having been approved by the court below. We are of the opinion, therefore, that so much of the order appealed from as reduced the amount of the commissions as found by the referee, should be reversed and the said referee’s report in that respect confirmed ; that so much of said order as disallowed the item of counsel fees allowed to the counsel for the assignee, should be reversed, and that the matter as to the services of the counsel for the assignee upon the accounting and their value, should be referred back to the referee for a new trial and further report thereon, and that upon the coming in of that report the proper proceedings maybe taken for its confirmation, and the allowance to the counsel of the assignee of such sum as the value of his services upon the accounting may appear to be ; and that so much of the said order appealed from as approves of the referee’s fees, should, for the reasons above stated, be affirmed.
*293 No costs on this appeal should be allowed to either party.
Beach, J., concurred.