PEOPLE v. BROOKLYN BANK.

(Supreme Court, Special Term, Ulster County. July 19, 1909.)

1. RECEIVERS (§ 199*)—ALLOWANCES—CONCLUSIVENESS.

Where all the parties entitled to appear were present or represented when allowances were made to receivers and their counsel in proceedings for the liquidation of a bank, and no appeal was taken from the order granting allowances by any party or by the Attorney General representing the people, they were concluded by the order and could not thereafter have the allowances reduced.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 391; Dec. Dig. § 199.*]

2. RECEIVERS (§ 197*)—COMMISSIONS—ASCERTAINMENT.

On settlement of a receiver's account, he is entitled to commissions on the value of the entire property that came into his hands and which has been distributed by him by order of the court whether to the creditors or to the beneficiaries or by a settlement or compromise between the parties, where the property consists of cash, securities, notes, bonds, mortgages, evidences of indebtedness, or choses in action.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 388; Dec. Dig. § 197.*]

3. RECEIVERS (§ 198*)—COMMISSIONS—STATUTES—CONSTRUCTION.

Laws 1906, p. 897, c. 349, provides that a receiver of a corporation, in addition to necessary expenses, is entitled to such commissions not exceeding 2½ per cent. on the sums received and disbursed by him as the court allows, but, except on final accounting, such a receiver shall not receive for his services for any one year a greater amount than $12,000 nor for any period less than a year more than at that rate, and, on final accounting, the court may make an additional allowance not exceeding 2½ per cent. if satisfied he has performed services that fairly entitle him to such additional allowance. *Held* that, under such section, a receiver is entitled to commissions not exceeding 2½ per cent. on the sums received and disbursed, which shall not exceed $12,000 a year, and, on final ac-

counting, to an allowance in addition not exceeding 2½ per cent. on the sums received and disbursed by him to what has been already received.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 392, 393; Dec. Dig. § 198.*]

**4.** RECEIVERS (§ 198*)—FEES—ALLOWANCE—AMOUNT.

Laws 1906, p. 897, c. 349, authorized allowance to a receiver in addition to necessary expenses of commissions not exceeding 2½ per cent. on the sums received and disbursed, nor more than $12,000 per year, and provides that the court on final accounting may make an additional allowance not exceeding 2½ per cent. of the sums received and disbursed, and, where more than one receiver is appointed, the compensation shall be divided. A temporary receiver was appointed for a bank on November 16, 1907, and on December 14th he and another were appointed permanent receivers. They took possession of the entire assets, amounting to $1,939,440.85, consisting of cash, notes, bills receivable, etc. In the spring of 1908, with the assistance of at least one of the receivers and their attorneys and without apparent objection of the other receiver, endeavors were made to reopen the bank, which was done in June following. H. was allowed $4,000 for services and expenses as temporary receiver and $19,000 as permanent receiver, and his co-receiver was allowed $19,000 for his services, and an allowance of $22,000 was made for counsel fees. *Held*, that such allowances were not excessive.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 392, 393; Dec. Dig. § 198.*]

**5.** RECEIVERS (§ 99*)—COUNSEL FEES—CONTRACTS—STATUTES.

Laws 1906, p. 898, c. 349, § 2a, authorizing receivers to contract for attorneys' services, did not contemplate that receivers should make a contract which would prevent the court in the proper exercise of its discretion on final accounting from allowing such a sum to counsel for receivers as would commend itself to the good judgment of the court considering all the facts then before the court.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 183–186: Dec. Dig. § 99.*]

Proceedings for the liquidation of the affairs of the Brooklyn Bank. On objection to allowances made to receivers and their counsel. Overruled.

Charles M. Stafford, for Receiver Charles M. Higgins for this application only.

James C. Church (Augustus Van Wyck, of counsel), for Receiver Bruyn Hasbrouck and for himself personally and for the receivers.

J. Edward Swanstrom, in pro. per., and for the receivers.

BETTS, J. On or about November 16, 1907, upon the application of the Attorney General of the state of New York based upon a report and complaint verified by the superintendent of banks of this state, Bruyn Hasbrouck was appointed temporary receiver of said defendant bank, with the usual powers and duties of such a receiver. He executed his bond and entered upon the execution of his trust, taking possession of the bank and its assets. On or about the 14th day of December, 1907, the said Bruyn Hasbrouck was made one of the permanent receivers of said bank, and Charles M. Higgins was associated with him as a permanent receiver, qualifying in January, 1908. Said permanent receivers took possession of the entire assets of the said bank and continued in possession of the same until June 20, 1908.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Such receivers converted various of the assets of the bank into cash, and had upon said June 20th a large amount of cash, some real estate and securities, and notes and bills receivable of large value belonging to this defendant. On the said 14th day of November, 1907, upon a similar application by the Attorney General, Goodwin Brown was appointed temporary receiver of the International Trust Company, and on or about December 12, 1907, he was appointed permanent receiver and continued in charge of such assets of said institution in the usual manner until June, 1908. Prior to the suspension of these two institutions, it had been the intention of the two corporations that the Brooklyn Bank should become merged in the International Trust Company; that is, the Brooklyn Bank should go out of business, and that all its assets and business should be turned over to the International Trust Company. This merger was partially completed when the financial crisis of October, 1907, came on, and it was impossible for those in charge to complete the transfer, and the accounts and assets of the two institutions were greatly intermingled and confused. The trust company had taken large amounts of securities belonging to the bank, and had hypothecated many of them with another bank.

In the spring of 1908 the two institutions, with the active assistance at least of Receiver Hasbrouck and the attorneys for the receivers, and without apparent objection on the part of Receiver Higgins, endeavored to have the Brooklyn Bank continue by the combination of the assets of the said bank and trust company, and permission was given for meetings of the stockholders and directors of the two corporations. Eventually, in June, 1908, the Brooklyn Bank came before the court with its petition, having cited the receivers and Attorney General and upon a report of the superintendent of banks and with his approval, asking the approval of the court to the plan of resumption outlined by it by which the Brooklyn Bank should resume possession of practically all the property in the hands of the receivers of both the bank and trust company, and the receivers should turn said property over to it, and the bank should resume business as a going concern, having the demonstrated financial ability so to do. It asked in its petition that the fees and disbursements of the receivers herein might be fixed together with proper allowances for their counsel, and that at an early date this resumption should be permitted and directed. The matter came on for a hearing before this court at a session held in the city of Hudson on the 16th day of June, 1908. Upon this hearing Receiver Hasbrouck and the counsel of the receivers, James C. Church and the representative of the other counsel of the receivers, Mr. J. Edward Swanstrom (who was ill) and Mr. Menken of Philbin, Beekman & Menken, attorneys for the bank, and Charles M. Stafford for Mr. Higgins, and certain depositors and Deputy Attorney General Olp appeared, and the commissions and expenses of the receivers were fixed and the allowances to their counsel were made, and the entire property in the hands of the receivers was directed to be turned over to the bank on or before June 20, 1908, and the bank was directed to reopen and resume business on June 22, 1908. Receiver Hasbrouck was allowed for services and expenses rendered or incurred or to be incurred by him $4,000 as temporary receiver and $19,000

as permanent receiver in all the sum of $23,000, and Receiver Higgins was allowed for services and expenses incurred by him the sum of $19,000, and the allowances to the counsel, Messrs. Church and Swanstrom, were fixed at $22,000. Receiver Higgins did not appear, and the court did not have the benefit of his personal advice as to resumption, the important matter, or as to commissions and allowances, the incidental matter. Mr. Charles M. Stafford appeared on that day for Receiver Higgins particularly in reference to the amount of his fees, and urged that they should be liberal. No objections were made by any person to the amount of these commissions, expenses, and allowances that were granted by the court. It was:

"Further ordered that, upon turning over to the defendant herein by the receivers, the assets of defendant said receivers shall take a receipt therefor, and shall file such receipt together with an affidavit showing an account of assets which have been converted into cash by said receivers and also containing in such affidavit a statement of such cash, and said affidavit shall also state the amount of their disbursements, and said statement, affidavit, and receipt shall be filed with the motion papers on which this order is granted nunc pro tunc as of the date of this order, and shall be deemed the final accounting of said receivers judicially settled hereby."

The receivers carried out the direction of the court, turned the property over to the bank, after deducting the amounts respectively allowed them for services and expenses and the allowances to the counsel, and crediting all parties with such amounts as had been received by them on account of such services and expenses or allowances, and took the receipt of the bank for the property thus transferred. Upon the 22d of June, 1908, the bank resumed business, and has successfully conducted it since. In December, 1908, Receiver Higgins filed his affidavit, receipt, and account with a report and upon notice to the Attorney General and the attorneys for the defendant, for the receivers, and attorneys for certain stockholders. In his notice, so far as I understand it, he asks that a review be had of his account, and that he be discharged as co-receiver, and that the sureties upon his official bond be released and discharged, and that he be discharged from any further liability on account of said receivership, and his bond shall be deemed canceled. Receiver Hasbrouck also filed his affidavit, receipt, and report and account at about the same time. Mr. Higgins' account alleges practically the same things that were before the court upon the hearing in June, and shows compliance with the order made in June, 1908, and alleges that, through inadvertence or otherwise, the fees allowed to the receivers were too large, and that the allowances to the counsel were too large. He alleges that in his opinion he (Higgins) was not entitled to over $15,000, and that some time after receiving the same (at what time does not appear) he returned $4,000 to the bank, and he asks that his co-receiver, Hasbrouck, be directed to return a greater amount, so that their fees will be about alike, and that the counsel, Messrs. Church and Swanstrom, be also directed to return a large portion of the allowances granted to them by the court at that time and actually paid to them by Receivers Higgins and Hasbrouck. The ground upon which the allowances to the receivers is alleged to be excessive is because the statute does not authorize the amount actually paid, and that the allowances to the counsel were

too great because it was covered by a written contract which Mr. Higgins thinks was either not called to the attention of the court or else overlooked by it in fixing those allowances. The depositors were paid in full on resumption so they were not affected by the allowances made. The allowances were, in fact, paid from the property of the stockholders of the Brooklyn Bank and the International Trust Company, both represented by Philbin, Beekman & Menken. In December, 1908, after filing the vouchers of the receivers the said Philbin, Beekman and Menken asked for time to examine the receivers' vouchers to see if they desired to file any objections thereto, but none were filed, so the court assumes nothing objectionable was found. All the parties entitled to be here on this motion so far as it now affects the amounts allowed for services and disbursements for the receivers and for counsel were before the court in June, and the order was entered in a day or so after it was granted, and has never been appealed from. The Attorney General was there representing the people, and made no objections to the allowances granted. The attorneys for the bank were present and made the motion and made no objection to the amount allowed to either receivers or counsel. In fact, they suggested a larger allowance to counsel than was made by the court and substantially the same allowance to Receiver Hasbrouck for his services and expenses as was made, so that in the ordinary methods pursued in motions of this kind and governed by the Code of Civil Procedure and practice of the courts the parties would be concluded by the action then taken. Nevertheless I am going to take up this matter of the allowances made to both counsel and receivers and consider them:

Did the court err in making the allowance to receivers for their services and expenses? We shall see. Formerly and under the common law a receiver, executor, administrator, guardian, or trustee was not allowed any payment for his services. He was simply allowed remuneration for his expenses. This was changed nearly 100 years ago.

By chapter 251, p. 292, Laws 1817, passed April 15, 1817, it was enacted:

"That it shall be lawful for the court of chancery in the settlement of the accounts of guardians, executors and administrators on petition or otherwise to make a reasonable allowance to them for their services as such guardians, executors and administrators over and above their expenses and that when the rate of such allowance shall have been settled by the chancellor it shall be conformed to in all cases of the settlement of such accounts."

On the 2d of October, 1817, Chancellor Kent in the Matter of Roberts, a Lunatic, 3 Johns. Ch. 43, held that a committee of a lunatic is entitled to an allowance by way of compensation for his services in receiving and paying out moneys within the equity of the statute (above quoted) authorizing this court to make a reasonable allowance for guardians, executors, and administrators for their services, and he adopted the following rate of compensation as reasonable:

"Five per cent. on all sums received and paid out, not exceeding 1,000 dollars (i. e. 2½ per cent. for such sums received, and 2½ per cent. for such sums paid out). Two and a half per cent. on any excess, between 1,000 dollars and 5,000 dollars. One per cent. for all above 5,000 dollars."

So it will be seen that in the first reported case after the passage of this statute its provisions were extended from guardians, executors, and administrators to include the committee of an incompetent person. On the 16th of October, 1817, a general rule was adopted by the chancellor and the court of chancery establishing the above allowance to guardians, executors and administrators. This rule was followed for many years until it was embodied by the Legislature in substantially the same form in 2 Rev. St. (1st Ed.) p. 93, § 58.

In McWhorter v. Benson, Hopk. Ch. (2d Ed.) 29–42, decided in 1823, the above rule was construed by the chancellor in fixing the compensation for the services of an executor, and he held:

"The amount of property confided to an executor, administrator, or guardian and passing through his hands is a basis upon which his reward may be easily computed. The custody and care of the estate are his duty; and his services in general bear a just proportion to the amount of the estate. Though the value of his services may not be in exact proportion to the value of the estate, yet in the general course of these affairs the amount of the estate indicates with sufficient exactness the extent of his labors, cares, and services and their reasonable value. Thus a plain rule of calculation is afforded by the amount of the property held in trust, a rule which is comprehensive as well as simple, and which in all ordinary cases is a very just criterion of the reasonable value of the services of the trustee."

In the Matter of Robert Bunch, a nonresident debtor, reported in 12 Wend. 280, and decided in 1835, where a compromise was had between the debtor and the creditor by a cash payment from debtor to creditor direct and the sheriff received no property under the attachment, still it was held that the trustees were entitled to their percentages or commissions under a statute which provided that they should have a certain rate per cent. upon the whole sum that shall come to their hands; the court holding that the statute should not be given too literal a construction, and that the meaning of the act is that the trustees shall receive a commission upon such sum as shall be realized in consequence of the proceedings instituted. In Matter of Kellogg, An Infant, 7 Paige, 266, decided in 1838, it was held that one-half of the commissions specified in the statute was allowed for receiving and one-half for paying out the trust moneys. In Cairns v. Chaubert, 9 Paige, 160–164, decided in 1841, the chancellor held:

"The decree was also right in allowing to the executrix commissions upon the bonds and mortgages which were valid and collectible, and which were assigned to the trust company, with the assent of the surrogate and the appellants, as permanent securities for the benefit of the remaindermen. This money was in legal effect received and paid over for the purpose of the trust."

By chapter 3, p. 4, Laws 1842, it was provided that receivers of moneyed institutions shall be entitled to the same commissions and compensation for their services as were then allowed by law to executors and administrators. In the Matter of De Peyster, 4 Sandf. Ch. 545, decided in 1847, it was held that "a trustee in passing his accounts, on being discharged from his trust and transferring the property to his successor, is entitled to commissions on the capital of the estate consisting of stocks and bonds and mortgages, although the same came to him from his predecessor and were neither invested nor converted by him," and that he is also entitled to commissions on real

estate which his predecessor bid in on the foreclosure of mortgages thereon; the same being in equity personalty so far as the trust estate was concerned. In Bennett v. Chapin, 3 Sandf. 673–675, decided in 1850, Chief Judge Oakley held that a receiver who had, on settlement between the parties, paid over money collected amounting to more than $20,000, and had transferred a large amount of book accounts and other things in action, was entitled, in addition to his full commission on the money received and paid, to the commissions on the value of all the assets taken out of his hands by the order settling the suit, and delivering it to the parties. These were book accounts and other things in action not yet converted into money, and it was held that, if the parties could not agree upon the value of these effects, the court would appoint a referee to ascertain it.

In Van Buren, Attorney General, v. Chenango County Mutual Insurance Company, 12 Barb. 671, decided in 1852, the receiver was appointed in 1845, and the said receiver by the order appointing him by the Chancellor was directed "to collect, sue for, and recover" all the demands due to the company, including deposit notes. The receiver ascertained that it was not necessary to collect all these notes and returned over $100,000 of them to the makers by order of the court in 1848, and applied for his commissions upon the notes so returned by him to the makers thereof, and it was held that these notes, although never sued on or collected, should be deemed in legal effect, so far as receiver's commissions are concerned as so much money received and paid over for the purposes of the trust and the receiver was allowed his statutory fees upon the value of such notes. In Howes v. Davis, 4 Abb. Prac. 71, decided in 1856, the provisions of 2 Rev. St. (1st Ed.) p. 93, § 58, as to executors' commissions, is interpreted to mean one-half of the commissions therein for receiving and one-half for paying out. In Gardiner v. Tyler, 42 N. Y. 505, where a receiver was appointed pending a contest over a will, it was held that "a receiver is an officer of the court, and, as such, in the absence of legislation, the court has the authority to determine his compensation, and is not limited to that fixed by statute for executors and guardians"; and that case was followed in Baldwin v. Eazler, 34 N. Y. Super. Ct. 274.

Subdivision 4, § 244, Code Proc., provided:

"Receivers of the property within this state of foreign or other corporations shall be allowed such commission, as may be fixed by the court appointing them, not exceeding five per cent. on the amount received and disbursed by them. * * * "

In Wagstaff v. Lowerre, 23 Barb. 209–223, it was held in computing the commissions of a trustee under a will that the amount of property held in trust is the proper basis of allowance to the trustee, and that there is no well-grounded distinction between lands and stocks as to the trustee's compensation, and the trustee was therefore held entitled to his commissions upon the real estate as well as upon the personal property. This case has, however, simply so far as the real estate is concerned been criticised by the Court of Appeals in Phœnix v. Livingston, 101 N. Y. 457, 5 N. E. 70, where the court holds that that question is an open one in that court, and, so far as it has been able to ascertain, has never been discussed and decided in that court.

In Phœnix v. Livingston, 101 N. Y. 451–456, 5 N. E. 70 (above referred to), it is held that trustees in a will are not entitled to commissions upon the value of real estate of which they have been given a power of sale, but of which power they have never availed themselves, and which real estate passed to the remaindermen by the will, and not by act of the trustees; but the court on page 456 of 101 N. Y., on page 71 of 5 N. E., recognizes the rule:

"That securities received by an executor and by him turned over to the parties entitled, might be treated as money received and paid out for the purpose of computing commissions."

The headnote in Cox v. Schermerhorn, 18 Hun, 16, is as follows:

"Where an executor sells real estate, subject to mortgages, he is entitled to commissions on the whole purchase price, including the amount secured to be paid by the mortgages, and is not limited to commissions on what remains after deducting the amount of the mortgages therefrom."

In the Matter of the Estate of John Moffat, deceased, 24 Hun, 325, it was held that:

"The commissions allowed to a trustee [appointed by the court] are to be computed upon the entire fund in his hands, whatever may be the nature of the property, and even though he may transfer to the beneficiaries the same securities which were received by him at the time of the creation of the trust."

In Matter of Curtiss, 9 App. Div. 285, 37 N. Y. Supp. 586, 41 N. Y. Supp. 1111, executors were allowed commissions upon the original securities transferred by themselves as executors to themselves as trustees under the same will.

I think we have examined sufficient cases now to determine that the law in this state is, and has been for many years, that an executor, guardian, committee, receiver, or trustee upon the settlement of his account, or upon the settlement of the estate or litigation in which he has been appointed, is entitled to his commissions under a fair construction of the present and previous statutes upon the value of the entire property that came into his hands, and which was distributed by him by order of the court whether to the creditors of the insolvent estate or to the beneficiaries under a will or trust instrument, or by a settlement or compromise between the parties, where the said property consists of cash, securities, notes, bonds, mortgages, evidences of indebtedness, or choses in action. There are some decisions which hold that the value of real estate should be treated in the same way, and an executor, trustee, guardian, or receiver should be allowed his commissions upon the value of that, but we have seen that in Phœnix v. Livingston, 101 N. Y. 451–456, 5 N. E. 70, these decisions are criticized by the Court of Appeals, and it was then announced that the question had not yet been decided in that court.

There are two cases which might be cited as being adverse to this conclusion of this court herein, but which are really not so upon examination. One of them is the Matter of the Woven Tape Skirt Company, 85 N. Y. 506, in which a receiver was appointed on behalf of a corporation, not because it was insolvent, but because the parties could not agree about the management of their own affairs. After the appointment of the receiver, the business was carried on by the parties

in interest almost entirely, to the exclusion of the receiver and by his consent, and the only funds which came into the hands of the receiver were the proceeds of the sale of the property at auction some time after his appointment, and the court properly held that the receiver was entitled only to commissions upon the amount of money which came into his hands because the business had not been carried on by him, nor had he been in actual control thereof, and that he was not entitled to commissions on the moneys received and disbursed by the parties in the carrying on of the business. The court held that:

"The case presented is not analogous to one where the trustee has actually taken possession of the assets, and they have been appropriated the same as money for the benefit of the trust, and thus are the same as money received or paid over for the purposes of the trust, and the trustee is entitled to commissions thereon. The authorities cited in this connection have no application."

The other case is In the Matter of the Assignment of Milan Hulburt, 89 N. Y. 259, in which after the assignment the assignee permitted the assignors to remain in possession and the assignors compromised with their creditors, and it was held that the assignee was entitled only to a commission upon the amount of the moneys actually received by him and not upon the value of all the assigned property, which is also an entirely different case from the case before us.

The allowance to a receiver now is governed by section 2, c. 378, p. 558, Laws 1883, as amended. The evolution of the section is interesting, and it is inserted here with the various amendments thereof in full. Said section is as follows:

"Every receiver shall be allowed to receive as compensation for his services as such receiver, five per cent. for the first one hundred thousand dollars actually received and paid out, and two and one-half per cent on all sums received and paid out in excess of the said one hundred thousand dollars."

This section was amended by chapter 275, p. 449, Laws 1886, so as to read as follows:

"Every receiver shall be allowed to receive, as compensation for his services as such receiver, five per centum for the first one hundred thousand dollars received and paid out, and two and a half per centum on all sums received and paid out in excess of the said one hundred thousand dollars. But no receiver shall be allowed or shall receive, from such percentages or otherwise, for his said services for any one year, any greater sum or compensation than twelve thousand dollars, nor for any period less than one year more than at the rate of twelve thousand dollars per year, provided that where more than one receiver shall be appointed, the compensation herein provided shall be divided between such receivers."

This section was further amended by chapter 506, p. 1245, Laws 1901, so as to read as follows:

"Every receiver shall be allowed to receive, as compensation for his services as such receiver, five per centum for the first one hundred thousand dollars received and paid out, and two and one-half per centum on all sums received and paid out in excess of the said one hundred thousand dollars, but no receiver shall be allowed or shall receive on such percentages or otherwise, for his said services, for any one year a greater sum as compensation than twelve thousand dollars nor for any period less than one year more than at the rate of twelve thousand dollars, unless the court upon proper notice shown to said receivers makes an extra allowance not to exceed two and one-half per centum upon the sum received and paid out, provided that where more

than one receiver shall be appointed, the compensation herein provided shall be divided between said receivers."

And as finally amended and as it stood at the time these receivers were appointed, and at the time at which they accounted, by chapter 349, p. 897, Laws 1906, provided as follows:

"A receiver of a corporation, except a receiver appointed in proceedings for its voluntary dissolution, is entitled, in addition to his necessary expenses, to such commissions, not exceeding two and one-half per centum upon the sums received and disbursed by him, as the court by which or the judge by whom he is appointed allows, but except upon a final accounting such a receiver shall not receive on account of his services for any one year a greater amount than twelve thousand dollars, nor for any period less than a year more than at that rate. Upon final accounting, the court may make an additional allowance to such receiver, not exceeding two and one-half per centum upon the sums received and disbursed by him, if the court is satisfied that he has performed services that fairly entitle him to such additional allowance. Where more than one receiver shall be appointed, the compensation herein provided shall be divided between said receivers."

Under this section the accounting was had. This section permits and allows as the court interprets it two different percentages which may be allowed a receiver. In the first place, by the first paragraph thereof such receiver or receivers is entitled to a commission not exceeding 2½ per centum upon the sums received and disbursed by him as the court allows, but shall not receive for any one year a greater amount than $12,000, nor for any period less than a year more than at that rate; and it further provides that, where more than one receiver shall be appointed, the compensation herein provided shall be divided between said receivers. Then from this first paragraph of this section we have these receivers entitled to the sum of $1,000 per month from the time of their respective appointments and qualifications until the final discharge of the receivers or their turning over the property committed to them, and during the time in which they both acted as receivers then the $1,000 must be divided equally between them; that is, they should have $500 each per month.

Then not considering, because it is unnecessary so to do, how much commissions Receiver Hasbrouck should have as temporary receiver for caring for the property, and then turning it over to the permanent receivers, excepting the monthly compensation and disregarding portions of months, because the fees permitted by the statute are so greatly in excess of the fees and expenses allowed, we would have under this first paragraph Receiver Hasbrouck entitled to two months at $1,000 each and as co-receiver for six months at $500 a month, a total of $5,000, and Mr. Higgins as co-receiver for six months the sum of $3,000.

Then we come to the second paragraph of said section 2, which the court does not interpret at all as it has been interpreted on behalf of Mr. Higgins. Upon final accounting the court may make an additional allowance to such receiver not exceeding 2½ per centum upon the sums received and disbursed by him if the court is satisfied that he has performed services that fairly entitle him to such additional allowance. An "additional allowance" must, of course, mean an allowance in addition to what has heretofore been allowed under the

first paragraph; i. e., in addition to the respective sums of $5,000 and $3,000. It cannot from the context mean anything else. It must mean an additional allowance, or else it would not use those terms. The value which the court had before it in June, 1908, as to the property belonging to the Brooklyn Bank and in the possession of the receivers, and which was substantially agreed to be the value of the property in the hands of the receivers, was $1,939,440.85. It is true that in the decree there was a clause inserted that the receivers should not be bound so far as their fees were concerned as to the value of this property as fixed by the superintendent of banks; yet it was used in all the important parts of this decree made by the court as its value— that is, as its value for the purpose of liquidation—although it was conceded that it would have a much greater value as a going concern, so the court did then hold and will now hold these receivers for the purposes of their commissions to this value of the property which is the sum of $1,939,440.85. Included in this amount were these two sums which the court will deduct for the purpose of ascertaining the commissions which could be allowed under this statute if the court were so disposed to allow them. The value of the real estate was $65,000, and the value of the safes and furniture $9,137.50, making a total of $74,137.50; so, deducting this sum $74,137.50 from $1,939,440.85, leaves as the value of the entire assets (less real estate and furniture) the sum of $1,865,303.35, which the receivers were directed by the court to turn over to the Brooklyn Bank in settlement of these proceedings in order to discharge the receivers and have this bank receive its property and continue doing its business. This was the value of the superintendent of banks which was conceded to have been made with a view of the bank being in liquidation and to have been much less than the property was fairly worth for the purposes of a going concern. Two and one-half per cent. upon this sum of $1,865,303.35 is $46,632, one-half of this is $23,316. Add this to the commission $5,000 allowed by the first paragraph of section 2, we have for Receiver Hasbrouck $28,316, which the court might allow, and not offend the statute, for fees. Add $23,316 to the $3,000 of Receiver Higgins, and we have $26,316 his fees. The allowance to Receiver Hasbrouck was not for commissions alone, but it was for commissions and expenses incurred and to be incurred. Receiver Hasbrouck's affidavit states that he had expended about the sum of $1,000 not covered by his account in and about the receivership matter, so that would make his possible allowance $29,316. This 2½ per cent. "additional allowance" would, of course, apply to the amount received and disbursed and services rendered by Receiver Hasbrouck while temporary receiver as well as while permanent receiver, and would, with the $2,000 hereinbefore referred to, amount to much more than the $4,000 allowed him for that period. Receiver Higgins has asserted at different times that he had large proper expenses about the receivership that he had not been allowed for and had not put in his bill, so that his possible $26,316 might have been increased by whatever proper disbursements he might be able to show to the court. So we have possible allowances under the statute complying with its plain terms and in accordance with the decisions of

the courts applicable to such matters for nearly 100 years of $55,632, and the allowance of the court was $42,000.

It is of interest to note in the construction that the court has given to this section that the section does not provide for a commission on any number of dollars as did the previous statutes which have been construed to mean property as well as dollars or money, but it provides for "two and one-half per centum upon the sums received." The word "sums" means totals or amounts, and, while the compensation is to be paid in dollars and cents, it may well be computed on the totals or amounts of the values of property, and not offend against the strict literal reading of the statute. Nor can it be contended that the court has allowed these receivers for a comparatively short period of service nearly all that they could get or would be entitled to if they had satisfactorily liquidated the entire assets of the bank. Under the construction here given, the receivers would be entitled on satisfactorily liquidating the bank to the full 2½ per centum of the sums received or at the rate of $12,000 per year for nearly four years if it took so long as that, and to the additional allowance of 2½ per centum on the final accounting, amounting altogether to 5 per centum upon the entire amount realized for their commissions, not their commissions and disbursements as herein allowed.

I think I have now plainly demonstrated that the court did not make an illegal allowance for services and disbursements to these receivers nor did the receivers ask, nor did the counsel consent nor the Attorney General consent to any illegal allowance. The amount was much within the plain intent and meaning of the statute.

Now, just a word as to whether since the statutory limit was not reached the court did in fact make an excessive allowance. Receiver Higgins is reputed to be a very wealthy man. He asked to be appointed receiver, and with his commissions has a perfect right to make such a disposition as to him seems best. Receiver Hasbrouck is a very busy, young business man in New Paltz in this county. He was drafted from his business by this court and requested to go to Brooklyn and take charge of this bank and use his best business judgment and endeavors to put it on its feet if possible, and, if not, to make as big a dividend for the creditors as it was possible to do. He consented at considerable pecuniary sacrifice. The court has known him from childhood, and has every confidence in his ability as well as his integrity, and his ability was in my opinion well shown on this receivership. It was stated upon the application for the permanent receivership here by the attorneys for the depositors that it was practically an impossibility to put the bank upon its feet and have it resume and continue business. The bank's attorneys had then no feasible plan for resumption. Therefore the depositors united in the application for the appointment of permanent receivers. This apparent impossibility to those people at close range Receiver Hasbrouck, with the assistance of the other parties interested in this matter, showed not to be an impossibility, but the successful resumption has been an accomplished fact. Mr. Hasbrouck's private business was, of course, neglected, and the court thinks that an exorbitant or excessive allowance was not made to him. I think he earned every cent that was awarded to him as did Receiver

Higgins. The further disposition of the commission after it was awarded to them is a matter for them to do with as they chose.

The accounts here submitted show that the total expenses of this receivership for the various counsel, for the receivers, and for the clerk hire, rent, and salary account and all expenses was less than $88,000, so that the total expense of rehabilitating this bank, this large institution, was less than 4½ per cent. of the amount determined by the banking department to be its fair value in liquidation and about 4 per cent. of its value as a going concern. It will be recalled in this connection, and the papers on file in this case show, that this Brooklyn Bank and the International Trust Company's affairs were in an apparently inextricable confusion when these receivers began their work. It was a condition of chaos, so that it required a high order of talent to extricate it, and the court is satisfied that he appointed the right men to accomplish this purpose and feels some pride in the result of their efforts.

As to the allowances made to counsel, James C. Church and J. Edward Swanstrom, these attorneys entered into a contract with the approval of the court under section 2a, c. 349, p. 898, Laws 1906, and by this contract the attorneys were to receive $14,000 a year. It was further provided in the contract by the fifth paragraph thereof that, if the bank resumed, the compensation paid to the said attorneys should be proportional to the time served. The sixth paragraph should also be read in connection with the fifth, and it provides that, if a final settlement of the joint receivership is affected in less time than one year, the receivers agree to recommend to the court that the said attorneys shall be paid the full maximum sum of $14,000. The final settlement of the joint receivership has been effected. Receiver Hasbrouck by being present at the time of the entry of the order in June, 1908, and knowing its provisions, may be considered to have recommended to the court the full maximum sum of $14,000. No protest was made at that time by Receiver Higgins or by any one authorized to appear for him. The parties to this contract, these receivers, and the attorneys evidently considered that their agreement would not be conclusive upon the court upon the final accounting, but that the court might make such allowances as to it seemed proper at that time, taking into consideration the standing of the attorneys, the nature of the services that had been rendered, and the result of the receivership. The parties conceded that, by agreeing to recommend to the court something different from the pro rata allowance per month, Mr. Higgins did not recommend the allowance of this $14,000. It was never intended in my opinion by the Legislature that the receivers should make a contract which would prevent the court in the proper exercise of its discretion upon a final accounting from allowing such a sum to the counsel for the receivers as would commend itself to the good judgment of the court, taking into consideration all the facts before the court on the final accounting. Messrs. Church and Swanstrom are men of the highest standing at the bar in their locality. Mr. Church has been surrogate of the county of Kings for a full term, and made an extremely creditable record as such judicial officer. His standing is deservedly high. Mr. Swanstrom has been president of the borough of Brooklyn with a like ex-

cellent record to his credit. The court has known Messrs. Church and Swanstrom for many years. It knows them to be able lawyers of integrity and of large practice, and has every reliance upon their professional ability and probity and standing as men and officers of this court. Messrs. Philbin, Beekman, and Menken, who represented the bank, are a leading firm of lawyers in New York City who have been connected with several of the banks in successful efforts for their resumption of business. They are familiar with the value of attorney's services. They knew the services of these attorneys in this matter, not only as to conserving the assets of the bank, but as to paving a way for the successful resumption thereof. The attorneys for the bank suggested on behalf of these attorneys a larger compensation than was finally allowed. Messrs. Church and Swanstrom are in this case officers of the court in a double capacity. They are attorneys and counselors at law, and they were the attorneys for the receivers, who were also officers of the court. Mr. Stafford as attorney for certain depositors was paid $12,000 in this matter by the bank. The court thinks that an allowance of $11,000 each to Messrs. Church and Swanstrom was not too large, that it was fairly commensurate and fairly proportionate to the value of their labors, and is not inclined to make any reduction from the allowances granted them. It was stated by the attorneys for the bank during the argument in December while this final matter was pending that they were familiar with the contract, and knew its provisions, and the suggestion as to allowances to Messrs. Church and Swanstrom was made to the court on behalf of the bank with full knowledge of such provisions.

My attention has been called to the Knickerbocker Trust Company Case and the recent decision of the Appellate Division thereon. So far as this case is concerned, the Knickerbocker Trust Company Case is simply an authority for and approval of the procedure here adopted. That was a temporary receivership. There were three receivers there instead of two. It was a trust company, and not a bank. The Attorney General objected to instead of approving of the allowances made, and appealed from the decision granting such allowances, and this court has no knowledge whatever of the amount of labor there involved, and it is not an authority against anything here held.

An order may be handed up passing and approving the accounts and disbursements of the receivers discharging and canceling their bonds and discharging the receivers herein.