## In the Matter of the WOVEN TAPE SKIRT COMPANY.

B. was appointed receiver of the W. T. S. Co. under the act of 1876 (Chap. 442, Laws of 1876). The company was solvent and was doing a profitable business; this was continued under an order of the court. C. and W., who owned all the stock, by an arrangement with B., conducted the business as before, making the purchases and sales, and receiving and disbursing the receipts. B. employed a clerk, whose compensation was agreed upon and allowed; he visited the factory himself nearly every day, and when absent received a daily report from said clerk. The only moneys received by B. were the proceeds of the sale at auction of the company property. *Held*, that, under the provisions of the *Code of Procedure*. (§ 244, sub. 4),* limiting the commissions to be allowed receivers of corporations to "five per cent on the amount received and disbursed by them," B. was only entitled to commissions on the proceeds of such sale; that, having left the whole management of the business to C. and W., he was not entitled to commissions on the money received and disbursed by them in carrying it on.

(Argued June 2, 1881; decided June 14, 1881.)

THESE were cross appeals by Moritz Cohn and James A. West, stockholders, and Francis M. Bixby, receiver of the above-named, The Woven Tape Skirt Company, from an order of the General Term of the Supreme Court, in the first judicial department, made March 20, 1880, which modified an order of Special Term fixing the amount of. fees to be allowed to said receiver, by reducing the allowance from $7,775 to $4,000.

* See Code of Civil Procedure, § 3320.

The Woven Tape Skirt Company was a corporation organized under the General Manufacturing Companies Act. The said Cohn and West owned all the stock of the corporation; they being unable to agree in the management of the business, application was made to the court for the appointment of a receiver, under chapter 442 of the Laws of 1876. In June, 1876, the court appointed said Bixby as such receiver. At that time the company was solvent and was carrying on an extensive business. An order was obtained that the receiver have power to continue the business; and thereupon an arrangement was made between the receiver and Cohn and West, by which the latter continued to carry on the business, substantially as though there were no receiver, until some time in December, 1876. The bank account of the company was kept in its name; all the goods were sold by the officers or employes of the company, and purchases made and moneys received and disbursed substantially as before the receivership. The receiver visited the manufactory nearly every day when in the city; he had a clerk or person in his employment who remained at the building, and advised the receiver from time to time of the general condition of affairs, and made reports to him daily in his absence. In December the property of the concern was sold at auction under the direction of the receiver, and the accounts then on hand uncollected went into his possession for collection. The total amount of moneys that actually came into the hands of the receiver was about $30,000.

*Samuel Hand* for Moritz Cohn, appellant.

*Geo. C. Holt* for Joseph I. West, appellant. The receiver was only entitled to a commission of five per cent on the moneys he actually received and disbursed. (Code of Civil Procedure, § 2429; 1 Laws of 1880, 368; Bliss' Code, § 2429, note.)

*Thomas Allison* for respondent. The receiver was entitled to such commission as the court appointing him fixed, not ex-

ceeding five per cent on the amount receiver and disbursed. (Old Code, § 244; 2 R. S. [Edm. ed.] 492, § 76.)    The amount on which the percentage should be allowed is the sum received and disbursed by the receiver, whether in cash or in specie, and whether to the *cestuis que trust* or parties immediately in interest, or to third parties for their benefit. (*Cairns* v. *Clanbert*, 9 Paige, 160, 164; *Bennett* v. *Chapin*, 3 Sandf. 673, 675; *Van Buren* v. *Chenango Co. Mut. Ins. Co.*, 12 Barb. 671; *In re DePeyster*, 4 Sandf. Ch. 511, 512, 514.)

*Per Curiam.*    The receiver of this corporation was not appointed by reason of its insolvency, but in consequence of a disagreement as to the management of its affairs.    He was appointed in June, 1876, and the assets of the company never passed into his hands.    The business, which was profitable, was continued by an order of the court permitting the same to be carried on, which was done under the direction of the receiver, but mainly in charge of Cohn & West, the parties in interest, except that all checks upon the bank were to be signed by West and Cohn, instead of being signed by West alone.    These parties, or those in their employment, purchased materials, sold goods, hired and discharged the employes, and received and paid out moneys, the same as they had done before the receiver's appointment.    The receiver visited the company's place of business nearly every day when in town, and when absent received a report nearly every day from the clerk whom he employed at a compensation agreed upon, which was allowed upon the accounting.    He also arranged differences occurring between the partners from time to time.    Upon the sale of the property at auction the sum which came into his hands actually amounted to $30,000.

The whole amount of actual receipts of the business for which an account was rendered before the referee was $173,-998.26.    The amount of moneys paid out and the expenses of carrying on the business and the administration of the receivership was $166,988.83.    At the time of the appointment

of the receiver the firm had cash and property on hand, including the value of the patents which were afterward sold, to the amount of from $63,000 to $74,000, and owed $12,000, or $15,000, which was not then due, and the whole amount of the capital contributed in cash was $40,000. It will be seen that the business was carried on and the receipts and disbursements were made mainly through the instrumentality of West & Cohn, who owned all the stock, and whom the receiver allowed to act in connection with the clerk who was employed at the expense of the receivership. The moneys were mainly received and paid by them, and never came into the hands of the receiver. The Code (§ 244, subd. 4) declares that a receiver shall be allowed such commissions as shall be fixed by the court, not exceeding five per cent upon the amount received and disbursed by him. The receiver here did not receive or disburse the entire sums which were received and expended in the transaction of business, but these were received and appropriated by the persons already named, with his assent and approval and, having left the whole management to them, he was not entitled to what passed through their hands and was administered by them. Although exercising somewhat of a supervision over the affairs of the corporation, as he allowed them to act in his place, it must be regarded that the receivership did not extend to the business which they transacted. Within the meaning of the Code it cannot be claimed that he either received or disbursed the moneys which never came into his possession and over which he exercised no personal control. The company was entirely solvent, and there were no creditors nor any persons besides Cohn & West to whom he was liable to account, and as they assented to the arrangement by which the business was conducted, he was not responsible for the receipts or disbursements or for any loss which might have been incurred by their act or neglect. They would be estopped from making any claim against him for any loss of funds or property which might have been occasioned by their own act or conduct, and hence he could not have been made liable. The arrangement which was made for the conduct of the

business relieved him entirely from all claim for losses which might arise by their neglect or misconduct and from all liability. He had a right to take possession and to control the whole property, but he failed to exercise such right, and allowed the business to proceed the same as it had previously done, and as was evidently for the interest of all the parties. Under these circumstances it cannot be claimed that he received and disbursed any of the funds which were received or paid out in carrying on the business, either in fact or constructively. These amounts represented the capital of the company turned over and used again and again in the ordinary course of the business. The capital was comparatively small, and the receipts and disbursements can scarcely be said to represent the actual amount upon which commissions were chargeable, even if they had passed into the hands of the receiver. Only $30,000 was actually under his control, and for this alone was he entitled to a percentage according to law. It cannot be said that he either received or disbursed any thing beyond this, or that any other property passed actually through his hands, so as to entitle him to a percentage on the whole amount received or paid out or beyond that sum.

The case presented is not analogous to one where the trustee has actually taken possession of the assets, and they have been appropriated the same as money for the benefit of the trust, and thus are the same as money received or paid over for the purposes of the trust, and the trustee is entitled to commissions thereon. The authorities cited in this connection have no application. We think that there is no ground for holding that the receiver is in a position to claim any such control over the moneys as to entitle him to commissions after he had voluntarily assented to their disposition by the actual parties in interest, or that such parties have accepted this view by procuring an order against him to compel him to pay over to them moneys in his hands, or by asking that he be compelled to continue the business until December 1, 1876, and not be allowed to sell the patents.

The allowance of the General Term was beyond the amount

authorized by law, and the order granted should be modified by restricting the receiver to commissions on the moneys actually received and disbursed by him. As the receiver was authorized to apply to the court to fix the amount of his commissions, his costs should be paid out of the fund.

Order modified by changing the amount payable to the receiver to the sum of $1,500, and directing that the costs of receiver be paid out of the fund.

All concur, except FOLGER, Ch. J., absent.

Ordered accordingly.