THE PEOPLE OF THE STATE OF NEW YORK, PLAINTIFF, *v.* THE MUTUAL BENEFIT ASSOCIATES, DEFENDANT.

(IN THE MATTER OF THE COMMISSIONS OF ANGUS McDONALD, LATE RECEIVER OF DEFENDANT.)

*Receivers of insolvent corporations — commissions of — upon what they should be computed.*

The appellant, who had been appointed a receiver of the Mutual Benefit Associates, after having acted for some time in the execution of the trust, tendered to the court his resignation. Upon the settlement of his accounts, the total amount of the funds, which had come into his hands, was fixed at $10,617.90, and it was found that he had reassessed members in the United States to the amount of $73,757.23, and in Canada to the amount of $5,844.32, and that the estimated death claims proven against the trust, and which had not been assessed, amounted to from $40,000 to $50,000, making a total of $120,000 or $130,000, of which the receiver estimated that one-third might be collected. The court allowed him for commissions $550.

*Held,* that his commissions were to be determined by the law in force at the time of his appointment, viz., section 3320 of the Code of Civil Procedure.

That the court properly refused to allow any commissions upon the amount of the liability of the members, resulting from the assessment imposed by the receiver.

That the amount allowed by the court below should not be increased.

APPEAL by Angus McDonald, late receiver of the Mutual Benefit Associates, the defendant, from an order of the Monroe Special Term, so far as it fixed the amount of his commissions as such receiver.

*Angus McDonald,* for the appellant, in person.

*D. O'Brien,* attorney general, and *John W. Hogan,* for the respondents.

BRADLEY, J.:

The appellant having been appointed receiver of the Mutual Benefit Associates in this action, and after having proceeded some time in the execution of the trust, tendered to the court his resignation. And a referee was appointed to take and state his final account, who made his report by which it appeared that the receiver

was charged with the sum of $10,617.90, as the total amount of funds that had come to his hands as such, which was reduced by credits against it to $1,689.82; that the receiver had reassessed members in the United States $73,757.23, and in Canada $5,844.32, and estimated the death claims proven against the trust and not assessed by the defendant at $40,000 to $50,000, making a total of $120,000 to $130,000, of which the receiver estimated one-third to one-half collectible.

On the coming in of the referee's report the court allowed to the appellant $550 for his commissions, accepted his resignation and appointed his successor to proceed in the execution of the trust. From that portion of the order awarding commissions this appeal is taken. The appellant's right to commissions is derived from the statute in force on that subject at the time he was appointed and entered upon the performance of his duties, which was prior to the passage of chapter 378 of Laws of 1883. And, therefore, that act has no application to this case. (*People ex rel. Newcomb* v. *McCall*, 94 N. Y., 587.) But the allowance of commissions to him is dependent upon the statute which provides that "a receiver, except as otherwise specially prescribed by statute, is entitled, in addition to his lawful expenses, to such a commission not exceeding five per centum upon the sums received and disbursed by him as the court by which or the judge by whom he is appointed allows." (Code Civ. Pro., § 3320.) This is a continuance substantially in that respect of the provision of the Code of Procedure, as amended in 1867. (Sec. 244, sub. 4.) It does not appear by the order on what amount or basis the allowance of the commission was made by the Special Term, but it is assumed by the appellant that it was founded substantially on the amount of money only which had actually come to his hands and that the liabilities of members of the association arising out of the assessments were not taken into consideration. And it is contended on his part that such liabilities as securities held by him were assets in his hands, and to the extent of their availability for the purposes of the trust property may and should have been treated as a fund received by him and as the subject upon which computation and allowance of his commissions should be made. And in support of that contention refers to *Attorney General* v. *Chenango County Mutual*

*Insurance Company* (12 Barb., 671), where it was held that a receiver was entitled to commissions on the value of deposit or premium notes which came to his hands.

This was there put, upon the ground that they were regarded as advances made by the members of the company who gave them; that they constituted the capital stock of the company, and that the receiver had the right to collect the whole amount of the notes, and, if that produced any surplus, to redistribute it amongst them.

The latter proposition has since been somewhat criticised in *Devendorf* v. *Beardsley* (23 Barb., 656, 665), and may not be entirely in harmony with *Attorney General* v. *North America Life Insurance Company* (89 N. Y., 94–105), where it was held that preminm notes, although property, were not assets in the hands of the receiver for the purposes of commissions. The statute under which the commissions were allowed in the Chenango County Mutual Insurance case, provided that "such receivers shall, in addition to their actual disbursements, be entitled to such commissions as the court shall allow, not exceeding the sum allowed by law to executors or administrators." (2 R. S., 470, § 76.)

This section, so far as relates to receivers of corporations, seems to have been repealed by operation of Laws 1867 (chap. 781, § 8). But the rule of construction applied to the statute, giving commission to those personal representatives, is referred to in support of the contention here of the appellant, in view of the analogous provisions in some respects of that statute, with that in question. Such construction is to the effect that bonds, mortgages and other securities, which go to them as such executors or administrators, are regarded as money received and in their hands, and to be treated as such, for the purpose of allowance of commissions. (*Bennett* v. *Chapin*, 3 Sandf., 673; *In re De Peyster*, 4 Sandf. Chy., 511; *Laytin* v. *Davidson*, 95 N. Y., 263.) But it is held that other property, not converted into either money or securities, does not constitute receiving of money within the meaning of the statute, because it was not contemplated that the same assets should be burdened with a double commission in the same trust, and this remaining duty of conversion, not accomplished by one such trustee, would fall on his

successor, who should take the compensation. (*Cairns* v. *Chaubert*, 9 Paige, 160, 164; *Foley* v. *Egan*, 13 Abb. [N. S.], 362, note; *Matter of Allen*, 29 Hun, 7; see, also, *Schenck* v. *Dart*, 22 N. Y., 420.) While the rate of commissions of executors and administrators are unqualifiedly fixed by the statute, those of receivers are limited by it, and within such limit are regulated by the discretion of the court. But what shall be deemed "sums received and disbursed" is a matter of construction of the statute. In that respect the courts have been somewhat governed by the nature and purpose of the trust, and not necessarily by adjudication giving construction to other statutes on the subject relating to different trusts, although susceptible of analogous interpretation. (*Matter, etc., of Hulburt*, 89 N. Y., 259.) Also by the considerations deemed contemplated by the statute, by way of execution of the trust which support the right to commissions. (*Matter of the Woven Tape Skirt Co.*, 85 N. Y., 506.) When the appellant accepted the trust, one and an important duty assumed by him was to charge the members with liability for an amount sufficient to pay the death claims which had arisen against the association. This he could do by assessments and the requisite notice pursuant to its by-laws and rules. (*McDonald* v. *Ross-Lewin*, 29 Hun, 87.) And this having been done by him, it is contended that such liabilities were "sums received," within the meaning of the statute, to the amount of their value. He has taken steps to establish the right to collect assessments which arises out of the relation the members so assessed assumed to the association for their mutual benefit when they became such. And while such right constituted the source of its capital, and in that sense may be deemed property, the amount with which the members may be charged cannot be treated as received, while the power to obtain it exists in action only. There were no established securities in the hands of the receiver, nor had anything come to him other than the mere right to take proceedings first to charge and then to collect; the former furnishes him with nothing to hand over and the latter remains unaccomplished.

The case of *Pentz* v. *Hawley* (1 Barb. Chy., 122), cited by the appellant, has reference only to the right to collect. And in the Chenango County Mutual Insurance Company case the trust was fully executed and the receiver, after handing over by direction of

the court, the uncollected notes to the makers, was discharged. Here the receiver voluntarily resigns while the trust remains unexecuted. And the burden of making collections from the members of the association will fall upon his successor, who will fairly be entitled to commissions upon the moneys which he may collect out of the liabilities referred to. This will constitute a considerable portion, if not the bulk, of the service required from the outset, to place the money in the hands of the trustee. There appears no cause for his resignation other than his desire to be relieved for his own convenience. And there seems to be no occasion under such circumstances to allow commissions for service which he voluntarily escapes and for a burden which his successor takes. (*Matter of Jones*, 4 Sandf. Chy., 615, 616.) Then, again, the assets of the association are in the custody of the court and the receiver is its instrument through whom the court has undertaken to execute the trust. And although two or more persons may succeed each other in that relation they constitute but the continuance of the receiver of the court. The law contemplates but one commission for the entire service. The fund, existing only in liability with the right to proceed to collect, cannot be deemed gathered so as to place the *corpus* of it in the custody of the court, so as to say that the successor will be entitled to commission for disbursing it only. And while the receipt and disbursement of sums may be severally treated for the purposes of commissions to two persons successively occupying the place of receiver, there is no recognized method by which either one of the two acts of service can be severed for that purpose. (*Attorney General* v. *Continental L. Ins. Co.*, 32 Hun, 223.) And it is the duty of the court to see, when the trust is fully executed, that the fund has not been burdened with unnecessary expense.

Nothing appears in the papers before us, in any view which might be taken of the condition of the fund existing in the liability of the members of the association, to justify the allowance of commissions upon it so situated. There is no evidence here, and it does not appear by the referee's report what the value is of these assessments against the members, or that they have any value. He simply reports that the receiver estimated that from one-third to one-half of them can be collected. The burden was on the appel-

lant to establish his right to commissions. We see no reason requiring their increase beyond the sum allowed.

The order should be affirmed.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Order affirmed, without costs.