OPINION OF THE COURT
Harold Hyman, J.
The assignee for the benefit of creditors moves to: (a) settle and have allowed its final account, (b) compromise its claims against Warshaw Bros, and Federal Construction Corporation for $1,000, (c) permit the claim against Gilbane Building Company be settled for $96,710.86 and to have such fund distributed to "trust fund beneficiaries” pursuant to section 71 of article 3-A of the Lien Law, (d) allowance of assignee’s commissions in the amount of $23,799.06, (e) allowance of fees to an accountant in the amount of $3,500, (f) allowance of attorneys’ fees to two law firms for legal services allegedly rendered to and for the assignee in the amount of $67,500, and (g) such incidental and further relief as may be just in the premises.
The court has examined the alleged final account and the papers on file and finds that this assignment was delivered on August 27, 1968 and filed on August 28, 1968, almost 10 years ago; and, that at said time, two law firms were retained as counsel for the assignee by said assignee, but why such took place is neither explained nor reconciled.
Originally, the assignee, on August 28, 1968, applied to the court (Tessler, J.) for the fixation of its "provisional bond in the amount of $10,000” advising said court that "it” appraised the physical assets located at the premises of the assignor at the amount of $5,000, and that the accounts receivable "have *362 [had] doubtful value”. Apparently the assignee "overlooked” the fact that it had retained one Irving Garsson to appraise such physical assets, that it allegedly took such appraiser four days to make and complete such appraisal, and that such appraisal was made in the amount of $13,353.19. Nevertheless, in complete disregard of such appraisal, it filed such $10,000 bond and simultaneously obtained an order (Aug. 28, 1968) permitting the sale of such assets at public auction, excepting therefrom "accounts receivable and books of records”.
The auction sale was held on September 19, 1968, the "gross proceeds” thereof being $24,714.17, from which the auctioneer deducted, alleged (1) labor "for his employees” ($1,409), (2) Social Security for "his employees” ($126.81), (3) printing circular for the sale ($73.50), (4) stamped envelopes ($34.20), and (5) compensation (workmen’s compensation insurance) ($45.79). Items 2, 4 and 5, above, totaling $280.30 are disallowed and the assignee is surcharged said amount. This court has many times pointed out that, except for "legitimate” labor items, the above such items are not chargeable to an assignee for they are not viable charges of the assignee but are costs of doing business by an auctioneer.
The net proceeds of sale received by the assignee were $21,148.41 but he should have received at least $21,428.71. Commissions are payable only upon "actual” receipts by an assignee (Gotham Bldrs. Supply Corp. v Gutman, NYLJ, Sept. 2, 1977, p 12, col 5). The "labor” items are still open to serious question, for which a hearing will be held by later direction.
On October 28, 1968, the assignee applied, ex parte, to the court for an order permitting the retention of an accountant. At that time the assignee had on hand $21,148.41 plus certain other additional moneys it received, so that the estate was then approximately $34,000, cash on hand, but with only a $10,000 "provisional bond” requested and filed. The application also contained the accountant’s affidavit estimating his services at $2,500. The order obtained provided "that the compensation for said services shall not exceed $2500” (Bosch, J., Oct. 22, 1968).
On October 28, 1968, simultaneously with the above (accountant) order, an application was made to file a "supplemental bond” in the sum of $25,000; the order (Bosch, J.) was made and an "additional bond for $25,000” was therefore filed. That "additional bond” was an amount increasing only a *363 "provisional bond”. This court has noted, and stated on other previous occasions, that the "provisional bond” only applies until such time as the assignee actually obtains monetary proceeds from sales or collections of accounts receivables to that time, and an inventory must then be filed and, at that latter time, the application should be for the filing of a "permanent or final bond”. (Rules of App Div, 2d Dept, Rule 677.7; 22 NYCRR 677.7.)
On July 18, 1969 the assignee obtained an order directing all interested parties to show cause why a claim for material supplied and labor performed to Belmont Race Track for the New York Racing Association amounting to $115,980.01 should not be settled for $84,962.02 and "to pay therefrom the amount of any Mechanic’s Liens or claims by materialmen and subcontractors against the improved property of said The New York Racing Association (Belmont Racetrack)”. Prior to the assignment herein, the assignor had retained the firm of Berman, Paley, Goldstein & Berman, Esqs., to prosecute such claim. There is no question that the assignee took his title subject to the trust claims and liens of laborers and materialmen (Kane Co. v Kinney, 174 NY 69), and that any funds obtained as to this claim were "trust funds” payable to lienors or claimants pursuant to section 71 of article 3-A of the Lien Law. The mechanic’s lien claimants totaled $50,795.86 and the other claimants, also beneficiaries of the trust, totaled $19,765, making for a total of $70,560.86, thus leaving a balance to the "estate” of $14,401.16, which less $500, the retained attorneys’ lien, left a final estate asset of only $13,901.16. The order was granted August 14, 1969 (Clark, J.). Apparently the fund was received by the assignee on October 9, 1969; the assignee scheduled the "entire” item (amount) in his final account (Schedule B) as an "Account receivable” upon which, along with other funds, he seeks commissions and its attorneys seek counsel fees.
Trust funds, even if received for distribution purposes, are never the property of the assignor’s estate; the assignor would have been, and its assignee, in its place became, merely a "trustee” (Aquilino v United States of Amer., 10 NY2d 271; Harman v Fairview Assoc., 25 NY2d 101; Seaboard Sur. Co. v Massachusetts Bonding & Ins. Co., 17 AD2d 795; Gotham Sand & Stone Corp. v Nuns of Order of St. Dominic, 33 Misc 2d 951; Lien Law, art 3-A, § 71) of the funds; a "trust res” is payable first to the "trust beneficiaries” who contributed work, labor, *364 services and/or materials to and/or for the improvement (Harman v Fairview Assoc., supra; Gotham Sand & Stone Corp. v Nuns of Order of St. Dominic, supra), even though such subcontractors, laborers or materialmen may not have filed mechanic’s liens they did not lose their right as cestuis que trustent (Harman v Fairview Assoc., supra; Matter of Marstan Plumbing Co., 176 Misc 956). Such funds should have been segregated by the assignee from funds subject to claims of administration or general creditors (Lien Law, art 3-A, § 71; Matter of Marstan Plumbing Co., supra), and distributed expeditiously, if necessary, through medium of an interim account and report (Debtor and Creditor Law, § 14). Schedule "B” should therefore be corrected and amended accordingly; and, the computation by the assignee of his commissions should likewise be corrected and reduced accordingly.
On September 13, 1968 the assignor had remaining in its business checking account $5,874.64. Such funds are not deemed to have been "collected or received” insofar as commissions or attorneys’ allowances are concerned; they were transferred by the very nature of the assignment instrument (Matter of Hulburt, 89 NY 259; Matter of Woven Tape Skirt Co., 85 NY 506; Matter of Fulton, 30 Hun 258; Cox v Schermerhorn, 18 Hun 16; Matter of Bunch, 12 Wend 280). Here again, the amount upon which commissions might be payable should also be corrected by the assignee in his schedules.
"Interest” obtained on certificates of deposits purchased or savings accounts are not items "received” by an assignee upon which full commission are payable; they may represent an increase, if at all, to the estate upon which commissions possibly may be paid upon paying same "out”. Escrow moneys are definitively not "received” for estate purposes unless ultimately becoming an estate asset at the termination of the escrow. The assignee’s request for commission should therefore be corrected and amended accordingly.
The City of New York paid $55,921.08 directly to the Insurance Company of North America and to certain accountants; this sum was never received by the assignee, for it was paid "directly” to the recipients as subrogees (surety) in reimbursement for payments made by such surety under its bonds issued to the assignor for moneys it, the surety, had paid directly to materialmen and laboreres who had supplied materials and/or labor to an improvement at Bellevue Hospital upon assignor’s default in so paying. Here again, since the *365 assignee was never the recipient thereof and was never entitled thereto, he was not entitled to list same as a receipt in Schedule B of its final account upon which to base commissions.
Counsel to the assignee are holding in escrow $96,710.86 since August 17, 1976 (almost two years) representing settlement proceeds of a claim against Gilbane Building Company in the amount of $125,000. The settlement arises out of a contract for plumbing services and materials supplied to British Airways Terminal and Kennedy Airport. The settlement had been approved by order dated October 21, 1975 (Camello, J.); said order directed that such fund was a "trust fund payable to qualified beneficiaries under the Lien Law” (art 3-A). No reason has been shown or explanation offered as to why such escrow moneys, which are legally trust funds, have been held this long and have not been previously sought to be distributed by the attorneys-escrowees, nor why such escrow-trust fund is also included in assignee’s Schedule "B”, nor why the "interest” earned thereon is also so scheduled. The assignee is not entitled to commissions thereon.
The above "trust fund-escrow” now amounts to $96,710.86 plus interest obtained thereon as of January 9, 1978 of $5,137.17, for a total of $101,848.03, to which interest is now to be added thereon at the rate of 5% per annum from January 9, 1978, $1,697.46, making a grand total now deemed being held in escrow-trust of $103,545.49 as of May 9, 1978. Since the escrowee-attorneys now seek direction as to the disposal thereof (and it should have taken place with promptness upon due application to lienors and claimant beneficiaries) they are hereby directed to now disburse and distribute such funds ($103,545.49) pro rata to the "trust beneficiaries” promptly and without any further delay. The assignee’s Schedule B and his request for commissions thereon should also be amended accordingly.
Although the assignee is required to include in his schedules any interest received on the principal moneys he has collected, these should be set forth in detail as to on what funds, which accounts, such interest was received. Certainly the interest received on the escrow moneys and the trust funds should not be included in the income schedules for the principal thereof never belonged to nor came into the estate, nor could be considered any part of the estate. It therefore may be, since it has not been clearly specified in the filed *366 schedules upon which items the interest was paid, that the court may have computed the interest amount as the trust funds and escrow without definitive correctness; it nevertheless should be set forth in an amended final account to be filed promptly in a separate and distinct schedule with full explanation thereof.
Schedule B includes an item of May 18, 1975 — Raisler Bros. — $32,500. An examination of the file indicates that the amount upon which the assignee may be entitled to commissions is far less than that set forth, namely only $5,702.91. The claim was settled for $32,500, but by virtue of a "Payment Bond” in the amount of $550,000 issued by the Insurance Company of North America in connection with assignor’s contract to perform and pay for the work performed, and because of assignor’s default in payment for labor and materialmen, the insurance company was obliged to make good such default and pay out therefor the sum of $26,797.09, becoming subrogated to the rights of those "trust beneficiaries” it was required to pay. That sum, $26,797.09 was never "received by the Assignee” as part of the estate, nor was the estate entitled thereto. Such sum ($26,797.09) cannot be deemed part of the estate upon which commissions are payable. The account should be amended accordingly.
On January 31, 1969 the assignee paid to Accounting Statistics Company the sum of $700. No explanation of such payment is made or set forth. This particularly needs detailed clarification in view of the retention of an accountant by prior court order and said accountant’s present request for fees.
In preparing the amended schedules of the final account, it should be observed that premiums paid on moneys allegedly received by the assignee, but which were never part of the creditors’ estate, or which may have been paid for the escrow received by or held by the attorneys for the assignee, without clear explanation to the various courts which increased the bonds filed or the permanent bond, filed, should be clearly set forth, computed and deducted as not a charge of the estate.
All applications, the entire motion, and the hearing to be held are herewith held in abeyance awaiting prompt filing of the amended final account by the assignee within 20 days hereof.