OPINION OF THE COURT
Stuart L. Ain, J.
By order to show cause granted July 11, 1988 (Winick, J.), the coassignees had moved, through their attorneys, for an order, inter alia: (1) settling and allowing their final account as filed (July 23, 1987) and amended (Aug. 29, 1988); (2) fixing *993 their commission as coassignees herein (Debtor and Creditor Law § 21); (3) granting an allowance to their attorneys for the legal services performed by them in behalf of the assigned estate; (4) granting an allowance to the coassignees’ accountants for their services to the assigned estate; and (5) discharging the coassignees and their surety from further liability after compliance with the order to be entered herein.
The application was opposed (to the extent that it sought "statutory” commissions of $15,003.15, attorneys’ fees of $75,000, and accountants’ fees of $38,270) by Arthur Kerner, Esq., in his own behalf and as the legal representative of three general unsecured creditors. Relying essentially on the Honorable Allan L. Winick’s decisions in Matter of Promotional Servs. (Kaufman) (NYLJ, Apr. 28, 1986, at 15, col 3) and Matter of Sound Spectrum (Unger) (133 Misc 2d 955), and on several of the decisions therein cited, Mr. Kerner argued:
(a) that the coassignees were not entitled to statutory commissions on interest (see, Matter of Astrove Plumbing & Heating Corp. [Jobbers’ Credit Assn.], 94 Misc 2d 359) and, based upon their performance herein, were not entitled to a maximum statutory commission of 5% on the moneys which were properly subject to commission calculation (Debtor and Creditor Law § 21; Matter of Fisher Bookbinding Co. [Angel], 119 Misc 2d 763; Matter of Astrove Plumbing & Heating Corp. [Jobbers’ Credit Assn.], 96 Misc 2d 420);
(b) that the coassignees’ attorneys’ request for a fee of $75,000 was unconscionable, particularly in view of the allegedly needlessly long and vindictive administration of this estate and the nature of the services performed by them (i.e., to a great extent, ministerial and administrative [Debtor and Creditor Law § 14] rather than professional legal services); and
(c) that the coassignees’ accountants’ request for a fee of $38,270 was totally out of line (based in large measure on Mr. Kerner’s asserted personal knowledge of the state of the books and records of the assignor corporation up to a scant two months before the filing of the assignment indenture herein).
The coassignees’ cocounsel strenuously objected to Mr. Kerner’s allegations, and his less than flattering characterizations of them and their administration of this estate, in a detailed response. They essentially asserted that the administration of this estate was in all respects proper, timely (under the circumstances) and professionally accomplished, all redound *994 ing to the ultimate good of all concerned parties and to the prejudice of none.
In a memorandum decision and order dated December 8, 1988, for the several reasons set forth therein, the coassignees’ motion was denied. The coassignees and their cocounsel were directed to submit certain additional documentation and explanations prior to January 16, 1989, at which time this matter was to be reconsidered. They were directed to submit, inter alia:
(1) proof of publication (22 NYCRR 202.63 [f] [1]);
(2) the examination of an officer of the assignor (22 NYCRR 202.63 [c] [2]);
(3) an explanation, regarding: the public auction sale;
(4) an explanation, regarding: the time for filing the debtor’s schedules and the interim account (Debtor and Creditor Law §§4, 14);
(5) an explanation, regarding: the time taken to administer this estate (22 NYCRR 202.63 [d] [9]);
(6) submission of documentation to support the claimed expenditures of estate funds (22 NYCRR 202.63 [d] [6]);
(7) explanations relative to certain of the creditor claims listed in the final account;
(8) petitions from the coassignees in justification of their commission request (Debtor and Creditor Law § 21); and
(9) supporting documentation for cocounsel’s claimed disbursements (Debtor and Creditor Law § 21) and for unpaid expenses of administration (particularly unpaid bond premiums).
In response, cocounsel Robert P. Herzog, Esq., has submitted an affidavit, treating each of this court’s concerns seriatim. Furthermore, the coassignees have each submitted a petition in which each ostensibly details his respective services in behalf of the assigned estate. Inevitably, Mr. Kerner has filed an affidavit in response to the foregoing, "to correct inaccuracies and wrongful accusations against [him]” allegedly contained in those submissions.
This court has carefully reviewed the foregoing submissions, and has given due consideration to the antithetical contentions contained in each. This court has as well reviewed again the entire County Clerk’s court file on this matter.
Based upon that review, the coassignees’ motion is decided as follows:
*995 Commissions and Allowances: This court declines the preferred invitation to emerge from the shadow of "the archaic concept of parsimonous compensation to attorneys and trustees” in order to bask in the modern glow of compensation per the new Bankruptcy Act. (See, Matter of Astrove Plumbing & Heating Corp. [Jobbers’ Credit Assn.], 96 Misc 2d 420, 424, supra.) Until such time as the New York State Legislature sees fit to scrap the existing provisions of the Debtor and Creditor Law, this court is bound by its dictates. Therefore, a general assignment for the benefit of creditors must still be viewed by this court as a legislative effort to provide "an expeditious method of administering an insolvent debtor’s estate, economically and efficiently and for the benefit of its creditors” (Matter of Sound Spectrum [Unger], 133 Misc 2d 955, 956, supra [emphasis added]). In return for performing in , a timely and efficient fashion the administrative and ministerial duties set forth in Debtor and Creditor Law § 14, the court may allow an assignee a maximum commission of up to 5% of the gross estate (Debtor and Creditor Law § 21). The court is further empowered to award "reasonable” fees to the experts retained by the assignee to render professional guidance and assistance to him. (See, Matter of Sound Spectrum [Unger] supra, at 959-960.) The methodology for arriving at what is "reasonable” was thoroughly examined and clearly set forth by the Honorable Allan L. Winick in Matter of Promotional Servs. (Kaufman) (NYLJ, Apr. 28, 1986, at 15, col 3, supra). This court will be guided by the principles therein.
As observed by Judge Winick, the basic guidelines for determining appropriate compensation in assignment proceedings were initially set forth by the Honorable Frank X. Altimari, now a Judge of the Second Circuit Court of Appeals, in Matter of Terryville Estates (Nassau County Ct, Nov. 30, 1973, index No. 12895/64). In 1975, those standards were adopted and expanded by the Honorable Raymond L. Wilkes in Matter of Pet Rack Distribs. (Rothman) (81 Misc 2d 727). Essentially, those two cases hold that a petition for fees should not be a very general and " 'somewhat diffuse history of the assignment’ ” (supra, at 728). Rather, the petition should be a "concise record” of (1) what was done; (2) who did it (senior partner, junior partner, clerical worker); and (3) the amount of time expended doing it. (See also, Matter of Filartex Fabrics Co. [New York Credit Men’s Adj. Bur.] 80 Misc 2d 665, 667-668.) From such a petition the court can then arrive at a *996 just fee for both the assignee and his attorney, applying these general guidelines:
(1) section 14 of the Debtor and Creditor Law spells out the duties of an assignee, those duties for which the Legislature considers a maximum commission of 5% of the gross estate to be just compensation. The assignee must perform those duties to be entitled to a commission (see, Debtor and Creditor Law §21);
(2) an assignee may retain legal counsel to advise him when “difficult questions” arise in the administration of the estate. An assignee may not turn over to his attorney the duties imposed by Debtor and Creditor Law § 14, and then expect to be automatically rewarded with the maximum commission allowable under Debtor and Creditor Law § 21;
(3) an attorney will not be compensated at professional rates for the nonlegal custodial or clerical functions properly to be performed by the assignee (see, Debtor and Creditor Law § 14);
(4) an attorney will be compensated commensurately with the novelty and complexity of the legal questions presented by the assignment proceeding;
(5) finally, the over-all relationship of the compensation (of both assignee and attorney) to the size of the estate will be considered under a concept of “reasonable economy of administration.” (See also, Securities Investor Protection Corp. v Charisma Sec. Corp., 352 F Supp 302, 307-308; Matter of Borgenicht, 470 F2d 283, 284, and cases cited therein; Matter of Industrial Tool Dev. Corp. [Cherno], Nassau County Ct, May 27, 1975, index No. 19292/73, Wilkes, J.)
Those guidelines derive generally from three sources — the body of law created by court decisions interpreting the provisions of the Debtor and Creditor Law; the law and practice under the former Federal Bankruptcy Act (Matter of Perfection Tech. Servs. Press [Cherno], 22 AD2d 352, 355); and court decisions which interpret statutory provisions similar to those found in the Debtor and Creditor Law, such as the Surrogate’s Court Procedure Act. (Debtor and Creditor Law § 15 [17]; see also, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 221, 236.)
(a) Coassignees’ Commission — The coassignees were given ample time to comply with what they and cocounsel still choose to characterize as this court’s “custom” of requiring an assignee’s affidavit of service. Whether “custom” or statutory mandate, they were given more than sufficient notice of what *997 this court desired from them. Despite that, one assignee responded with a 1 Vi-page letter, "detailing” his activities in behalf of this estate in seven succinct paragraphs. The other submitted a three-page affidavit of 13 numbered paragraphs. Most of those are either background/history of the proceeding, or snipes at the bona tides of the objecting creditor, or character and experience references. He does however incorporate by reference "the attorney’s and accountant’s fee applications so the Court may understand how much work was performed by all of us in this matter.” To be guided solely by that statement, there would seem to have been very little left for that coassignee to have done, other than to sign his name to papers placed before him.
However, a fair reading of all of the petitions for fees, within the context of the entire proceeding, makes it clear that each of the coassignees, by dint of his experience and contacts in the industry, did in fact perform some valuable services for the assigned estate. Neither however can be said to have acted the traditional (and expected) role of "assignee”. For what they did bring to an estate beseiged by an obviously disgruntled creditor/recent former owner, the coassignees are allowed a commission of $12,500. (Debtor and Creditor Law § 21; cf., Matter of Dean, 86 NY 398; Matter of Fisher Bookbinding Co. [Angel], 119 Misc 2d 763, supra; Matter of Astrove Plumbing & Heating Corp. [Jobbers’ Credit Assn.], 96 Misc 2d 420, supra.)
(b) Attorneys’ Fee — With respect to counsel fees, Judge Winick expanded on the general guidelines discussed above, listing 12 factors he deemed "appropriate for consideration by an assignment court in * * * awarding counsel fees.” (Matter of Promotional Servs. [Kaufman], NYLJ, Apr. 28, 1986, at 15, cols 3, 5, supra.) Those factors are indeed apposite here:
(1) The amount of time and labor it can be said was "fairly and properly” devoted to the case (i.e., justifiable time spent on the particular matter);
"(2) The novelty and difficulty of the questions;
"(3) The skill requisite to perform the legal service properly;
"(4) The preclusion of other employment by the attorney due to acceptance of the case;
"(5) The customary fee;
"(6) Whether the fee is fixed or contingent;
"(7) Time limitations imposed by the client or [by] other circumstances [such as by statute or court rule];
*998 "(8) The amount involved and the results obtained;
"(9) The experience, reputation, and ability of the attorneys;
"(10) The 'undesirability’ of the case;
"(11) The nature and length of the professional relationship with the client; [and]
"(12) Awards in similar cases.” (See also, Matter of Multiponics, Inc., 622 F2d 731, 733; Matter of Arlan’s Dept. Stores, 462 F Supp 1255, affd 615 F2d 925; Jacobowitz v Double Seven Corp., 378 F2d 405.)
Applying those standards to the instant proceeding, characterized as it is by less than "punctilious compliance” with statutory and regulatory requirements and limitations, by a lengthy administration delayed to some extent by the unavailability or laches of retained professionals, and by a "seige mentality” engendered in no small measure by the attitude and actions of the objecting creditor, this court concludes that $35,000 is just and fair compensation for the services (legal and otherwise) provided by cocounsel. Cocounsel are further allowed $498.89 as reimbursement for disbursements made and to be made.
(c) Accountants’ Fee — Adopting those appropriate of the foregoing standards to the services provided by the accountants herein, and particularly mindful of the apparent state of the assignor’s books and records at the time of the assignment, of the gains to the estate because of the accountants’ meticulous efforts, and of the unwarranted delays in administration contributed to by the accountants, this court deems a fee of $20,000 to be fair and just.
(d) Unpaid Obligations — To date, there is no indication that more than $1,160 for the payment of unpaid estate obligations is warranted. This figure is of course subject to revision upon submission (with the order to be entered herein) of the appropriate documentation previously requested.
Submit order in compliance with the foregoing, providing therein for the distribution of estate assets to the filed and allowed claimants, in full or pro rata where appropriate, in the order of their respective priorities in law.